**In re AN UNKNOWN GROUP OF CASES SEEKING TO BE FILED.**

United States Bankruptcy Court,
E.D. Virginia.

Nov. 4, 1987.

ORDER PROHIBITING FILING

HAL J. BONNEY, Jr., Bankruptcy Judge.

The Clerk of the United States Bankruptcy Court for the Eastern District of Virginia, Norfolk, Virginia, was approached by an attorney with the advice that he planned to file several large Chapter 7 cases with thousands of creditors. He was desireous of certain procedural information. He would not then identify the entities but indicated that it involved several health care companies. This information was relayed to the undersigned who became concerned that a public interest might be involved.

Accordingly, I called a conference in chambers with the attorneys for the prospective debtors, the Assistant United States Trustee and a Deputy Clerk. The attorneys were most helpful and were, indeed, anxious to face and deal with any public interest. It is discovered that these cases would involve forty-five (45) nursing homes in ten (10) states plus physicians' care provided in certain emergency rooms of hospitals. The prospective debtors provide, under contract, the services of physicians to the institutions. The principal is himself a medical doctor in this area.

The latter concern, the hospital emergency rooms, was later allayed by a signed statement that these services had earlier been discontinued without any interruption of services which might have, surely, endangered the public health.

In the presence of the prospective debtors' attorneys and the U.S. Trustee, I directed the Clerk *not* to receive these cases for filing until any threat to the public health was alleviated.

We then discussed how this might be done. I advised that the U.S. Trustee, now alerted, must be the party satisfied that no threat existed on behalf of the patients of the nursing homes. *Remember, these are immediate close-out, Chapter 7, cases.* I suggested that notice, certified, be sent advising that (1) bankruptcy was to ensue and that (2) this was ten days notice of the

cancellation of services. Three days were to be added for this notice by mail.

The attorneys returned the next day with the advice that their principal had on the prior day, the day we first met, sent notice of *immediate cancellation* of the contracts to provide physicians. Of course, I was greatly concerned about this cavalier action, particularly upon learning that the principal had left that day *for a two week vacation in Africa. Alas, the patients upon the beds, the principal upon the trail.*

I was advised by counsel that this would create no problems for the nursing homes. This representation by respected counsel carries weight. However, I suggested that the administrator for the prospective debtors make telephonic inquiry of the forty-five nursing homes and file an affidavit as to the results. When the U.S. Trustee is of the opinion the danger to the public had passed, she could advise the Clerk and filing of the Chapter 7 petitions would be permitted.

This procedure was followed and was largely successful; however, the report, the affidavit, is not unanimous. I asked the U.S. Trustee to make a telephone call to the home where a problem apparently exists. She did and reports there is still a problem there: no physician.

Accordingly, the Clerk will not accept the bankruptcy petitions for filing.

### By What Authority?

What court is there which has the authority to stand in the door and bar a filing? Well, someone has to be first or second. It is quite a novel issue but, obviously, an important one.

Why not permit filing and then quickly move to dismiss? Bankruptcy Rule 2002(a)(5) would require twenty days notice. The damage would be done. Why not shorten the twenty day requirement? Still, damage could accrue and in-and-out of bankruptcy causes both confusion and a temporary burden upon the interim trustee which is the court's concern. To follow the rule, in effect, is simply to "go through the motions," to perform as marionettes. I

say, the public interest rises higher than mere form which cannot anticipate every situation.

*Factually,* our concern is that the debtors will suddenly dump on the system, initially the interim trustee, its rather severe problems. It simply walks away from its responsibility to the patients and shifts this to the trustee. The prospective debtors argue they have no funds to continue. Perhaps true, technically. But behind the corporate entities is the sole principal, a medical doctor. No doubt the funds expended on the African trip would have employed a physician until the nursing home had opportunity to make other arrangements. Surely, the would-be-debtors were contemplating bankruptcy and back down the road could have, should have, curtailed services in an orderly fashion. Further, it appears there are no assets upon which the trustee could borrow in order to wind it down himself.

*Bankruptcy never existed for the purpose of an individual or corporation obtaining an "easy out" by making the system a dumping ground of a public responsibility. A department store, yes. It makes no difference if it opens tomorrow or not. But patients upon a bed is another matter. We hope not, but it could be a matter of life or death. I have never allowed a hotel, for instance, to close without reasonable notice to the guests.*

*Legally.* This order is being written quickly and we do not have the time to write an elaborate paper setting forth the factual harm to the public nor the law which permits the court to bar a filing. These points are important:

—The bankruptcy court is a court of equity. It can do what needs to be done as long as there is not an abuse of that power. *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); *Braddy v. Randolph,* 352 F.2d 80 (4th Cir.1965); *Brockington v. Scott,* 381 F.2d 792 (4th Cir.1967). Here the court asserts its equitable power.

—Bankruptcy is not a right, it is a privilege. *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). The prospective debtors come by privilege. They come seeking much relief which bankruptcy can surely afford, but no right exists to say, "I am perfectly entitled to come without terms."

*In summary,* we have

(A) Medical services companies which have failed.

(B) Patients in forty-five nursing homes which have been served by these companies.

(C) Almost all of the nursing homes have now made other arrangements for medical services.

(D) We deal here with a broad principle be it one patient or thousands.

(E) In a narrow frame, alternative arrangements have have not been made.

(F) If bankruptcy were to occur, an order for relief, in a Chapter 7 case, the interim trustee would inherit, completely without funds, a public responsibility if not a legal one.

(G) The bankruptcy courts must be aware of situations with an acute public interest. Indeed, not even the loss of jobs, but those ill to the point of being institutionalized.

(H) Behind this prospective bankruptcy is a principal, a medical doctor who has not demonstrated he is unable to make, personally, alternative arrangements in an acute situation such as this. *Based upon the facts, I believe the court under its equitable power can complel this in return for the privilege of filing bankruptcy.*

(I) We have not had time to fully set all of this forth, but perhaps by virtue of 11 U.S.C. § 105(a) the court can assume this posture to prevent *an abuse of process,* i.e., forcing upon the system what the prospective debtors themselves are unwilling to do, to-wit: remove the threat to the public health which remains.

It is, therefore, ORDERED that the Clerk of this Court shall not accept for filing those cases which are the subject of this opinion until such time as the United States Trustee is satisfied that no threat to the public health exists.

NOTE: This matter was subsequently made moot by the prospective debtors resolving these concerns. The point should be obvious: the court's insistence on the removal of any potential dangers to the public health brought about the desired result for all: the court, the prospective debtors, the U.S. Trustee and the patients had they known about it.