### In re PLAZA de DIEGO SHOPPING CENTER, INC., Debtor.

**Bankruptcy No. 88–02749(PG).**

United States District Court,
D. Puerto Rico.

July 20, 1989.

José Cardona Jiménez, Hato Rey, P.R., for debtor.

Medrich Torres–Ramos, Asst. U.S. Trustee, Hato Rey, P.R.

Maria Luisa Contreras, San Juan, P.R., for Creditors' Committee.

Pedro J. Fusté, Operating Trustee, Hato Rey, P.R.

## OPINION AND ORDER

PEREZ–GIMINEZ, Chief Judge.

On July 18, 1989, we ordered the appointment of Mr. Pedro J. Fusté as operating trustee in the above-captioned case, and indicated that an opinion explaining our rationale for so doing would follow soon thereafter. Accordingly, the following is meant to serve as an explanation of the legal and factual considerations underlying our order appointing Mr. Fusté.

At a hearing held June 19, 1989, counsel for then debtor in possession Plaza de Diego Shopping Center, Inc., stipulated that there existed at the time "cause" within the meaning of 11 U.S.C. § 1104(a) for the appointment of a Chapter 11 Trustee.[1] We thus immediately proceeded to order the appointment of an operating trustee pursuant to 11 U.S.C. § 1104(c).[2]

Our order required the United States Trustee for the District of Puerto Rico to submit, by June 26, 1989, three candidates eligible for the Court's approval. The order also provided that once the names of the three candidates were submitted, any of the parties in interest could present its position as to any of the candidates or submit additional candidates for our consideration. The Assistant U.S. Trustee indicated that she would comply with our order as soon as possible.

Despite these assurances, however, the U.S. Trustee subsequently filed a "Motion to Alter or Amend the Judgment" in which it essentially argued that our order violated Section 1104(c) of the Bankruptcy Code insofar as it constituted an attempt to usurp the appointment power vested by Congress in the U.S. Trustee's office. The motion requested that the Court limit itself to approving or disapproving any *one* candidate submitted by the U.S. Trustee. Without obtaining a ruling on this motion, the U.S. Trustee proceeded to file a "Notice of Appointment of Trustee and Application for Order Approving the U.S. Trustee's Appointment of a Trustee," in which it appointed Mr. Roberto López Alvarez as trustee and asked the Court for its approval.

Through an order dated June 29, 1989, we rejected the U.S. Trustee's appointment of Mr. López and reminded the U.S. Trust-

---

1. 11 U.S.C. § 1104(a) states, in its pertinent part:
   (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
   (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor. . . .

2. 11 U.S.C. § 1104(c) states, in its pertinent part:
   (c) If the court orders the appointment of a trustee ... then the United States trustee, after consultation with parties in interest, shall appoint, subject to the court's approval, one disinterested person other than the United States trustee to serve as trustee ... in the case.

ee that we had requested the submission of three candidates for approval. We rejected the U.S. Trustee's appointment not only because it did not strictly comply with the terms of our order, but also because at least two creditors, City Federal Savings Bank and Banco Nacional, N.A., claimed that the U.S. Trustee had not adequately consulted with all parties in interest, as required by 11 U.S.C. § 1104(c).

Our order requesting the submission of three qualified candidates instead of just one was based primarily upon our understanding that the expedited appointment of an operating trustee would best serve the interests of debtor's estate and its creditors. We requested three candidates in order to expedite the consultation and approval process which Section 1104(c) requires be conducted before any appointment is made. The precarious situation which had befallen debtor's estate, we felt, made time of the essence and mandated the swiftest possible action.

The case at bar had wallowed on the Bankruptcy Court's docket for almost a year, with little, if anything, happening since the original voluntary filing. At no time had debtor even attempted to take even the most rudimentary steps to get the case moving forward, such as filing a disclosure statement or reorganization plan.

Moreover, the Court had ample cause to believe that debtor's estate was rapidly deteriorating almost to the point of becoming unsalvageable. To begin with, numerous unanswered allegations of fraud, waste and mismanagement had been made by several creditors. Interestingly, rather than address these allegations, the debtor had stipulated in open court that cause existed for the appointment of a trustee. Further, it was quite evident that the shopping center's physical and economic condition had become ungovernable: the record is rife with all manner of complaints, including scurrying rodents infesting parts of the Mall, roof leaks, inoperable escalators, lack of cleanliness, lack of promotion and/or advertising, lack of adequate insurance, and the closing of access to Brumbaugh Street, the primary means of entrance and egress used by the Mall's customers.

Indeed, the physical condition of the shopping center had deteriorated to such an extent that some of its tenants apparently felt justified in not paying their rent. As a result, debtor filed eviction proceedings against some of these tenants. Thus drained of its lifeblood, the Mall's condition continues to worsen even as of this writing, and the vicious cycle which has led to the current state of atrophy and disarray is repeated once again.

In our view, swift action with respect to the matter of the appointment of an operating trustee was hence of the utmost importance. Thus, in order to expedite the process of selecting a qualified trustee, and to avoid to whatever extent possible the delays associated with repeated approval proceedings, we ordered the U.S. Trustee to submit to the Court the names of three qualified candidates instead of just one. We intended there to be only one consultation process and one potential court hearing, and hence no need for the reorganization of the estate to be further delayed by holding approval hearings for one candidate at a time.

On July 13, 1989, a hearing was held to consider the Creditors' Committee's "emergency" motion requesting that certain provisional controls be placed upon debtor's affairs until such time as a trustee was finally appointed. The hearing was attended by all parties in interest.

During the hearing, creditor City Federal Savings Bank objected to the provisional remedies sought by the Creditors' Committee, arguing that what was needed instead was the immediate appointment of an operating trustee. Although the U.S. Trustee objected to expanding the scope of the hearing to include the question of the appointment of a trustee, several of the other parties in interest expressed their agreement with City Federal's position. We decided to expand the scope of the hearing.

Since the only candidate before our consideration at that time was Mr. Fusté, we inquired as to the parties' views with respect to his potential appointment as a

trustee. The Court recessed and allowed the parties time to meet to discuss the candidate's qualifications. When the Court reconvened, we granted the parties opportunity to examine Mr. Fusté in open court.

The candidate was thus examined by counsel for the Creditors' Committee, the Debtor, and the Liga de Comerciantes de De Diego Mall. His testimony included a summary of his extensive experience as a consultant and manager of shopping centers, as well as his views about the poor management of the Plaza de Diego Shopping Center and the steps which he would take to get the operation back on its feet once again.

Thereafter, the Court was informed that an overwhelming majority of the parties in interest approved of Fusté's immediate appointment. None of the parties present objected. Even the Assistant U.S. Trustee, who had previously taken issue with the procedure established by our order, indicated that her office might be willing to reconsider its position in light of the creditors' unanimous approval of Mr. Fusté's appointment.[3] We granted the Assistant U.S. Trustee until July 18th to inform us of her office's position, and indicated that we would approve Mr. Fusté's appointment by that date.

We think both the facts and the law support the actions which we have thus far taken in the instant case. As set forth *supra*, the record makes clear that the creditors' only possible chance to salvage their already greatly atrophied interests lay in the immediate appointment of an operating trustee. All parties in interest, including the U.S. Trustee, agree that such an appointment serves the best interests of debtor's estate and its creditors.

Mr. Fusté is clearly qualified to serve as operating trustee. Based on the record, as established through Mr. Fusté's examination by the parties at the July 13th hearing, we find that he is a "disinterested person" who is not affiliated with any of the parties in interest, including the debtor and the U.S. Trustee. *See* 11 U.S.C. § 1104(c). The parties have been consulted with respect to his appointment, and have had the opportunity to question his qualifications. *Id.* He has had extensive experience managing shopping centers, and is intimately familiar with the particular problems posed by the reorganization of the Plaza de Diego Mall. Moreover, during his examination by the parties he unequivocally stated that he was ready to "immediately assume" his duties as trustee.

The only question remaining is whether or not, under the circumstances which surround this case, this Court has acted *ultra vires* in appointing Mr. Fusté trustee.

At the outset we note that the ultimate purpose of a Chapter 11 reorganization is to permit "the debtor to restructure a business' finances so that it may continue to operate, provide its employees with jobs, pay its creditors and produce a return for its stockholders." H.R.Rep. 595, 98th Cong., 1st Sess. 220 *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6179; *see also, In re American Mariner Industries,* 734 F.2d 426, 431 (9th Cir.1984). This has been at all times our guiding principle, and has informed every step we have taken thus far, including our order requesting the submission by the U.S. Trustee of three candidates instead of one.

Beyond that, however, we do not believe, as the U.S. Trustee asserts, that this order contravenes the plain meaning of Section 1104(c). Although the statute does speak of the submission of "one disinterested person", we do not think it was meant to preclude the submission of more than one qualified candidate so as to expedite the procedure in a particularly urgent case. Bankruptcy courts, being courts of equity, "do not read statutory words with a computer's ease, but operate under the overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *In re Briggs Transp. Co.,* 780 F.2d 1339, 1343 (8th Cir.1985) (quoting *Bank of Marin v. England,* 385 U.S. 99,

---

**3.** We note that the U.S. Trustee has never formally or informally objected to the appointment of Mr. Fusté.

103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966)). In the case at bar equitable considerations mandated an expedited approval procedure such as that contemplated by our order.[4]

 Nor can it be argued that the proposed approval procedure constituted an usurpation of the appointment power vested by Section 1104(c) in the U.S. Trustee. On the contrary, by the clear terms of our order the appointment power remained at all times in the U.S. Trustee, while the power of approval remained at all times in the Court. There has been no usurpation of power, but only a time saving measure taken with the success of the Chapter 11 reorganization in mind, and pursuant to the authority which the statute reserves in the Court of approving the appointment made by the U.S. Trustee.

Finally, we must reiterate and emphasize the fact that a bankruptcy court is a court of equity, with statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This authority may be exercised not only where it is necessary or appropriate to implement the provisions of the Bankruptcy Code, but also "where equity and substantial justice [so] require". *In re Dunckle Associates, Inc.*, 19 B.R. 481, 485 (Bkrtcy.E.D.Pa.1982); *In re Sholos*, 11 B.R. 782, 784 (Bkrtcy.W.D.Pa.1981).

The measures taken by the Court in this case have not gone beyond the broad equity power granted by Section 105(a). It is indeed unfortunate that the United States Trustee's uncooperative posture has compelled us to utilize this power, but we are absolutely convinced that such exercise was necessary to protect what is left of the already substantially atrophied interests of debtor's estate and its creditors. As a court of equity, we "can do what needs to be done as long as there is not an abuse of

[our] power." *In re an Unknown Group of Cases Seeking to be Filed,* 79 B.R. 651, 652 (Bkrtcy.E.D.Va.1987). We submit that we have done just that, and no more.

WHEREFORE, for the above stated reasons, we hereby confirm the appointment of Mr. Pedro J. Fusté as operating trustee in this case.

IT IS SO ORDERED.

---

**4.** In *Lemon v. Kurtzman,* 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973), Chief Justice Burger stated: "In equity, as nowhere else, courts eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests.... Moreover, equitable remedies are a special blend of what is necessary, what is fair and what is workable." 411 U.S. at 201, 93 S.Ct. at 1469. *See also, In re Hotel Associates, Inc.,* 3 B.R. 343 (Bkrtcy.E.D.Pa. 1980); *In re Metro Stores Company, Inc.,* 4 B.C.D. 886 (Bkrtcy.S.D.N.Y.1978). In our view, the instant case involves precisely these equitable considerations.