### In re CAPITAL SERVICES & INVESTMENTS, INC., Debtor.

**Bankruptcy No. 88–70370.**

United States Bankruptcy Court, C.D. Illinois.

Aug. 5, 1988.

Thomas R. Appleton, Springfield, Ill., for debtor.

Joel A. Kunin, Gerald M. Burke, E. St. Louis, Ill., for Trustee.

Kevin B. McCarthy, Indianapolis, Ind., U.S. Trustee.

Donald M. Samson, Belleville, Ill., Trustee.

John H. Germeraad, Springfield, Ill., for the Unsecured Creditors' Committee.

Angela P. Madison, Peoria, Ill., Staff Atty., U.S. Trustee.

## OPINION

LARRY L. LESSEN, Chief Judge.

The issue before the Court is whether the Court should approve the appointment of Donald Samson as trustee in this matter.

11 U.S.C. Sec. 1104(c) provides the method for the appointment of a trustee in a Chapter 11 case:

> If the court orders the appointment of a trustee.... then the United States Trustee, after consultation with parties in interest, shall appoint, subject to the Court's approval, one disinterested person other than the United States Trustee to serve as trustee ... in the case.

It is clear from this statute that once the Court orders the appointment of a trustee, it is the United States Trustee that actually selects and appoints the trustee. This appointment is subject to the court's approval. In determining whether to approve an appointment, the Court looks at three factors:

1) Whether the United States Trustee has consulted with parties in interest;

2) Whether the trustee is a disinterested person; and

3) Whether the United States Trustee has abused his discretion.

Before addressing these three criteria, some background is necessary.

Capital Services and Investments, Inc. ("CSI") filed a petition pursuant to Chapter 11 of the Bankruptcy Code on March 1, 1988. CSI is a privately held, diversified investment company. It has at least 25 affiliated businesses. The main focus of CSI appears to be the development of a 600 acre timeshare resort near Lampe, Missouri known as Swiss Villa Resort. CSI has almost 4,000 creditors, $1,600,000 in secured debt, and $22,400,000 in unsecured debt. There are over 2,000 claims on file as of this date.

On May 26, 1988, the United States Trustee for Region 10, Kevin McCarthy, filed a motion to appoint trustee or in the alternative to convert or dismiss. A hearing on the motion was held on June 17, 1988. In light of the medical problems of the chief executive officer of CSI and reluctance of the CSI Board of Directors to take control of the business, all the parties agreed that CSI needed someone to come in and take control of the business, and that the appointment of a trustee might be one way of accomplishing this result. How-

ever, the Creditor's Committee was opposed to the appointment of a trustee unless the United States Trustee provided the Committee with a list of candidates for the position. The Committee felt that the position of trustee in this case would be very difficult and challenging, and that great care should be taken in selecting the trustee. Although the United States Trustee indicated that this matter was an emergency, the United States Trustee indicated that it did not have anyone in mind for the job. Although the Court recognized the Creditor's Committee did not have veto power over the appointment of the trustee—only the Court has this power—the court also recognized the need for consultation and cooperation between the creditors and the United States Trustee. Therefore, the Court continued the hearing to June 28, 1988, in order to give the parties an opportunity to confer about the appointment of the trustee.

On June 28, 1988, the parties indicated that there had been no discussion about the appointment of the trustee. The United States Trustee indicated that it would not consult with the interested parties until the Court ordered the appointment of the trustee. The United States Trustee indicated that it would act alone and stand alone on this matter. The Court then authorized the appointment of a trustee. A hearing on the approval of the trustee was set for July 12, 1988. The Court presumed that there would be consultation and cooperation now that an order authorizing the appointment of the trustee had been entered.

On July 12, 1988, Donald Samson, who was appointed trustee the day before, appeared by his attorney. The attorney indicated that Mr. Samson was on an out of state family vacation. The attorney for the trustee assured the Court if Donald Samson were appointed, there would be open and frank discussions between the trustee and the parties in interest in the future.

The record at this July 12, 1988, hearing left substantial doubt as to whether the United States Trustee had consulted the parties in interest as required by 11 U.S.C. Sec. 1104(c). The Chairperson of the Creditor's Committee testified that the United States Trustee called her on July 8, 1988, regarding the appointment. Although the United States Trustee refused to disclose the name of the person he had in mind for the trustee position, he did inquire as to whether the Committee had any objection to a trustee from the Alton area. The Chairperson indicated that the Committee would prefer a trustee from either Springfield, Illinois, the principal place of business of CSI, or the Lampe, Missouri area where the Swiss Villa operation was located. During this conversation, the Chairperson also brought up the lack of cooperation on the part of the United States Trustee. She stated the United States Trustee responded that anyone trying to change his decision would be brought up on charges before the attorney disciplinary commission. The United States Trustee also stated that he had not considered the six names submitted by the Committee as potential trustees.

In response to this testimony, the United States Trustee submitted an unsworn Statement of the United States Trustee in Support of the Appointment of Donald Michael Samson and an unsworn Declaration of Charles R. Johnson Concerning Consultation In Parties in Interest Prior to the Appointment of Donald Samson In This Case. After reviewing these documents, the Court finds little evidence of good faith consultation.

Both the debtor and the Creditor's Committee indicated that they had no reason to doubt Mr. Samson's abilities. However, they simply did not have enough information about him to make an informed judgment. Both indicated that they would prefer someone from Springfield, Illinois or Lampe, Missouri. No matter how qualified Mr. Samson was, they argued that he could not be the hands on manager that CSI needed when he was 80 miles away.

The Court expressed serious concern about the lack of consultation in this case. The Court indicated that it was reluctant to approve Mr. Samson as trustee until there was additional information about Mr. Samson's disinterestedness and the parties had

an opportunity to talk to him. Mr. Samson's attorney indicated that Mr. Samson would appear at a hearing and answer all questions. On this basis, the Court continued the hearing to July 21, 1988.

On July 20, 1988, Mr. Samson's attorney notified the Court that Mr. Samson was still on vacation, and requested a continuance to July 26, 1988, one business day after Mr. Samson returned to work. Based on these representations, and the lack of objections by the debtor and the Creditor's Committee, the Court stated that it had no objection to the continuance. However, the United States Trustee notified the Court that it would appear at the July 21, 1988, hearing, and the matter was left on the docket.

At the July 21, 1988, hearing the United States Trustee requested a ruling on the appointment. Mr. McCarthy stated that he was opposed to the trustee being examined in court or subjected to cross-examination. Mr. McCarthy indicated that he was not a mere "common litigant", that his findings were entitled to great weight, and that he would not countenance a trial *de novo* on his appointment under Sec. 1104(c). He further stated that the Department of Justice strongly supported his position that he was required to have minimal consultation with interested parties and that the Court should not question his representation that his appointee was a disinterested party. The Court rejected these arguments, and the matter was continued to July 26, 1988, as requested by Mr. Samson.

At the July 26, 1988, hearing, the United States Trustee objected to the Court questioning Mr. Samson as to whether he was a disinterested party. Although Mr. Samson did not initially object, he subsequently did so at the behest of the United States Trustee. The Court overruled these objections, and ordered Mr. Samson to testify.

Mr. Samson is an attorney licensed to practice in Texas and Illinois. He is currently a Chapter 7 panel trustee in the Southern District of Illinois. He testified that he examined the schedules of CSI, and that he had not previously represented any of the creditors. He has no connection

with the Creditor's Committee or the attorneys representing the Creditor's Committee. He has no connection with the directors, officers, shareholders or employees of CSI or any of its affiliated businesses. He has no connection with the parties or the attorneys in the adversaries in this case. Mr. Samson stated that he understood the importance of the independence of the trustee, and that he could exercise his independent judgment.

■ It is clear from the foregoing that there has been a serious problem with the consultation requirement of Sec. 1104(c) in this case. Consultation is not defined in the Bankruptcy Code. The dictionary defines "consult" as "to seek advice or information from; ask guidance from." The Court believes that the consultation requirement of Sec. 1104(c) requires the United States Trustee to make a good faith attempt to get input from the parties in interest. The Court rejects the United States Trustee's position that it need only ask the parties in interest, "What kind of person would you like?" and that no further discussion is necessary. The United States Trustee will be looking for the same kind of person in every case—someone who is honest, competent, bondable, disinterested, and knowledgeable of bankruptcy law. Consultation with the parties in interest is required to apprise the United States Trustee of the special requirements of the case.

As stated above, CSI has a substantial amount of unsecured debt, and the Creditor's Committee represents a significant portion of this debt. Because of their substantial exposure to loss, they are vitally interested in this case. With this interest, they should be given an opportunity to offer their input into a decision as important as the selection of the trustee. More than that, Congress has mandated their input by requiring the United States Trustee to consult with the parties in interest.

■ In this case, Mr. McCarthy and his bankruptcy analyst made an unannounced visit to the office of the attorney for the Creditor's Committee on July 5, 1988, but the only discussion regarding the appoint-

ment of the trustee during this meeting consisted of Mr. McCarthy advising the attorney for the Creditor's Committee that he was considering the appointment of an experienced Chapter 7 panel trustee from the Central or Southern District of Illinois and that the appointment would be made on or before July 12, 1988. There was no evidence of the United States Trustee seeking the advice or guidance of the Creditor's Committee at this meeting. In the late afternoon of Friday, July 8, 1988, the United States Trustee telephoned the Chairperson of the Creditor's Committee and the attorney for the debtor and inquired whether they had a problem with a trustee from the Alton area. Both indicated that they would prefer a trustee from either Springfield, Illinois, or Lampe, Missouri. The United States Trustee did not disclose the name of the person he had in mind, even though it appears that the appointment of Mr. Samson was *fait accompli* at this point. Because the Court was not convinced that the United States Trustee had adequately consulted the parties about the appointment, the Court required Mr. Samson to appear in Court. At the hearing on the approval of the appointment, the parties were finally given an opportunity to have their input into the appointment of the trustee. Following the examination of Mr. Samson by the Court, the Creditor's Committee indicated that they were satisfied with Mr. Samson as trustee.

As a result of the Court's examination of Mr. Samson, the Court finds that he is a disinterested person as defined by 11 U.S. C. Sec. 101(13). The Court further finds that Mr. Samson is an experienced Chapter 7 trustee, and that the United States Trustee has not abused his discretion in appointing Mr. Samson as trustee. Therefore, the Court will approve the appointment of Donald Samson as trustee in this case.

As a final matter, the Court notes that the failure of the United States Trustee to adequately and in good faith consult with the parties in interest has needlessly prolonged these proceedings. It has resulted in wasted time, and unnecessary expense to the estate and the parties in interest. This matter could have been resolved more quickly had the consultation required by Sec. 1104(c) taken place. The Court is hopeful that these legal gymnastics will not be repeated in future proceedings.