In re PLAZA de DIEGO SHOPPING
CENTER, INC., Debtor.

Appeal of Robert L. COLEY, Esquire.

In re Petition of Robert L.
COLEY, etc.

Nos. 90–1038, 90–1163.

United States Court of Appeals,
First Circuit.

Heard May 8, 1990.

Decided Aug. 14, 1990.

Jennifer H. Zacks, Appellate Staff, Civ. Div., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., William Kanter and Dwight G. Rabuse, Appellate Staff, Civ. Div., Dept. of Justice, John E. Logan, Gen. Counsel, Washington, D.C., and Martha L. Davis, Charleston, W.Va., Executive Office for U.S. Trustees, were on petition for a writ of mandamus and brief for petitioner, appellant.

Arturo J. Garcia–Sola, with whom Manuel Fernandez–Bared and McConnell Valdes Kelley Sifre Griggs & Ruiz–Suria, Hato Rey, P.R., were on brief and response to petition for a writ of mandamus for respondent, appellee City Sav. Bank, F.S.B., in Conservatorship, Resolution Trust Corp., Conservator.

Sergio A. Ramirez de Arellano, Hato Rey, P.R., on brief for operating trustee Pedro J. Fuste.

Before CAMPBELL and SELYA, Circuit Judges, and ROSENN,* Senior Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

The United States Trustee ("U.S. Trustee") has appealed from an order of the District Court for the District of Puerto

* Of the Third Circuit, sitting by designation.

Rico appointing a trustee in bankruptcy for the Plaza de Diego Shopping Center, Inc. ("Plaza"), which had filed for bankruptcy under Chapter 11 of the Bankruptcy Code. The U.S. Trustee alleges that the district court acted *ultra vires* in making this appointment because under the statute, 11 U.S.C. § 1104(c), the power to appoint trustees in bankruptcy is vested solely in the U.S. Trustee. As we agree that the district court exceeded its authority, we vacate the court's appointment of the trustee and remand.

## FACTS

Immediately after the September 23, 1988 bankruptcy filing by Plaza, City Federal Savings Bank ("City Federal"),[1] the principal secured creditor of Plaza (holding a first mortgage over the real property of the shopping center and an assignment of the center's rents), commenced negotiations with Plaza's management for a stipulation for the appointment of a trustee and for the use of City Federal's cash collateral (the rents). When negotiations with Plaza deadlocked, on January 27, 1989, City Federal requested the bankruptcy court to order the appointment of an operating trustee for Plaza.[2] On February 9, 1989, the

case was transferred to the district court for the District of Puerto Rico after the two bankruptcy judges for the district of Puerto Rico recused themselves. The case was assigned to Chief District Judge Perez–Gimenez, who proceeded on the assumption that he was sitting as a bankruptcy judge. On May 12, 1989, the U.S. Trustee filed a motion for the court to dismiss the case, convert to a Chapter 7 proceeding, or order the appointment of a trustee. City Federal joined in the request for a trustee, but opposed the request to dismiss or convert. A hearing was scheduled for June 15, 1989. Extensive discovery by City Federal ensued, in which it uncovered evidence of gross mismanagement both before and after the bankruptcy filing, fraud to secured creditors both before and after the filing, multiple instances of bankruptcy fraud, and serious conflicts of interest in Plaza's management. At the hearing, several of the interested parties, including the U.S. Trustee, argued for the appointment of an "examiner with expanded powers" rather than a trustee,[3] but after extensive argument, Plaza itself stipulated the existence of "cause" for the appointment of a trustee.[4]

---

**1.** On December 7, 1989, City Federal was declared insolvent and closed pursuant to an order of the U.S. Department of the Treasury. Resolution Trust Corporation ("RTC") was appointed receiver of City Federal and succeeded to all of its rights, titles, powers, and privileges. City Savings Bank was then organized to take over such assets or liabilities of City Federal as RTC determined appropriate. City Federal's loan to Plaza was assigned to City Savings by RTC, and a motion for substitution of parties in the bankruptcy proceeding was granted by the court. Accordingly, the party appearing is City Savings Bank, but to avoid confusion, references will be to City Federal, RTC's predecessor in interest.

**2.** 11 U.S.C. § 1104(a) provides, in pertinent part: At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management,
. . .

(2) if such appointment is in the interests of creditors. . . .

**3.** The "examiner" option is available under 11 U.S.C. § 1104(b):

If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—
(1) such appointment is in the interests of creditors, . . . or
(2) the debtor's . . . debts . . . exceed $5,000,-000.

**4.** Section 1104(a)(1) of the Bankruptcy Code provides for the appointment of a Chapter 11 trustee "for cause." *See* note 2, *supra*.

On June 19, 1989, pursuant to 11 U.S.C. § 1104(a), the judge ordered the appointment of a trustee.[5] He further ordered the U.S. Trustee to submit within five days the names of three candidates for trustee so that the court could approve the appointment of one of them. The order stated that the court would review the U.S. Trustee's candidates—together with any candidates suggested by "any party in interest" —and that the court would then "approve the appointment of one of the candidates." The court, although recognizing that this procedure differed from that established by statute, adopted it anyway in order to avoid the delay in the reorganization of the estate that would result from holding approval hearings for one candidate at a time.

The representative of the U.S. Trustee had indicated in court that she would comply with the court's order to submit three candidates as soon as possible. Shortly thereafter, however, the U.S. Trustee voiced his objection to the court's order, and, on June 26, filed a motion to alter or amend the order on the ground that under 11 U.S.C. § 1104(c) the U.S. Trustee, not the court, is to appoint the trustee, subject only to the court's approval.[6] Simultaneously with this motion, the U.S. Trustee submitted a Notice of Appointment naming Roberto Lopez Alvarez as trustee, subject to the court's confirmation. On June 29, the court denied approval to the appointment of Mr. Lopez Alvarez. Chief Judge Perez–Gimenez again directed the U.S. Trustee to submit three candidates for the court's consideration.

On June 30, 1989, unhappy with the U.S. Trustee's failure to comply with the June 19 order or to give serious consideration to its preferred candidate for trustee—Pedro J. Fuste—City Federal filed a motion recommending Mr. Fuste for appointment as trustee for Plaza. Another creditor, Banco Nacional, later joined City Federal's recommendation. Both City Federal and Banco Nacional argued that the U.S. Trustee had failed to comply with its statutorily mandated obligation to consult the parties in interest with respect to the appointment of a disinterested party as trustee.[7]

On July 10, 1989, in view of the controversy that had arisen over the appointment of a trustee, the creditors' committee filed an emergency motion requesting provisional remedies to protect the estate from the debtor in possession until the final appointment was made. A hearing on this motion was held on July 13, 1989, and all the parties in interest, including the U.S. Trustee, were in attendance. City Federal objected to the motion, arguing that the immediate appointment of a trustee would better serve the parties' interests. The creditors' committee agreed to withdraw the motion for provisional remedies if a trustee were appointed. Other parties in interest also argued for the appointment of a trustee. The court, over the objections of the U.S. Trustee, then expanded the scope of the hearing to consider the appointment of a trustee for Plaza. Because the court had denied approval to the appointment of Mr. Lopez, the only candidate before the court at that time was City Federal's nominee, Mr. Fuste. The parties in interest were given the opportunity to consult among themselves on the appointment of Fuste and to examine him on his qualifications and on whether he was a "disinterested party." The parties in interest then unanimously expressed their approval of the appointment of Mr. Fuste. The representative of the U.S. Trustee indicated that she was willing to reevaluate the appointment of Fuste, and the court gave the U.S.

---

**5.** 11 U.S.C. § 1104(c) provides the procedure for the appointment of a trustee:

> If the court orders the appointment of a trustee ... *then the United States trustee,* after consultation with the parties in interest, *shall appoint, subject to the court's approval,* one disinterested person other than the United States trustee to serve as trustee ... in the case. (Emphasis added.)

**6.** *See* note 5, *supra.*

**7.** 11 U.S.C. § 1104(c) provides that the appointment by the U.S. Trustee shall be made "after consultation with parties in interest." One court has held that "the consultation requirement of Sec. 1104(c) requires the United States Trustee to make a *good faith* attempt to get input from the parties in interest." *In re Capital Services & Investments, Inc.,* 90 B.R. 382, 385 (Bankr.C.D.Ill.1988) (emphasis added).

Trustee until July 17 to express his final position on Fuste. The court, however, indicated its intent to appoint Fuste as trustee by July 18, in view of the fact that all of the creditors and parties in interest had approved him. The U.S. Trustee's ultimate response was again to object to the appointment. He reminded the court that, under federal bankruptcy law, 11 U.S.C. § 1104(c), only the U.S. Trustee has authority to appoint trustees. On July 18, the court entered an order appointing Fuste as trustee for Plaza. An opinion and order followed on July 20, 1989, explaining in detail the reasons for the appointment. *In re Plaza de Diego Shopping Center, Inc.,* 103 B.R. 14 (D.P.R.1989).

## DISTRICT COURT'S OPINION

In its opinion and order, the district court explained that the rapidly deteriorating state of the debtor's affairs had made quick action in appointing a trustee imperative, and that it had chosen to ask for candidates and make the appointment itself "in order to expedite the process of selecting a qualified trustee." The court rejected the U.S. Trustee's appointment of Mr. Lopez not only because it did not comply strictly with the terms of the court's order to submit three names for consideration, but also because City Federal and Banco Nacional had claimed that the U.S. Trustee had not adequately consulted with them in making the appointment.

The court rejected the U.S. Trustee's argument that its method of appointing the trustee violated 11 U.S.C. § 1104(c). Although "the statute does speak of the submission of 'one disinterested person'" by the U.S. Trustee, the court concluded, it was not "meant to preclude the submission of more than one qualified candidate so as to expedite the procedure in a particularly urgent case." The court believed that it had not usurped the U.S. Trustee's appointment power, because "the appointment power remained at all times in the U.S. Trustee, while the power of approval remained at all times in the Court." Accordingly, stated the court, its appointment was merely "a time saving measure with the success of the Chapter 11 reorganization in mind," made pursuant to its statutory authority under 11 U.S.C. § 1104(c) to *approve* the U.S. Trustee's appointment, together with its statutory authority as a court of equity to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." 11 U.S.C. § 105(a). That the U.S. Trustee's uncooperative posture had compelled the court to invoke its equitable power was unfortunate, the court concluded, but considerations of substantial justice had mandated the order issued in the case.

## STANDING OF U.S. TRUSTEE TO SEEK REVIEW OF THE ORDER OF APPOINTMENT

■ A preliminary question is whether the U.S. Trustee, who does not have a pecuniary interest in the Chapter 11 bankruptcy proceeding, has standing to appeal from, or otherwise to seek review of, the district court's order appointing Mr. Fuste as trustee. We hold that he does. The Sixth Circuit recently decided the same question, upholding the standing of the U.S. Trustee to appeal from a bankruptcy court's decision refusing to appoint an examiner under 11 U.S.C. § 1104(b)(2). *In re Revco D.S., Inc.,* 898 F.2d 498 (6th Cir. 1990). Judge Bailey Brown, writing for the panel, derived the U.S. Trustee's interest from his statutory responsibility to represent and protect the public. He found added proof in the language in section 307 empowering the U.S. Trustee to "raise," "appear" and "be heard" on any issue. While other government agencies had similar powers, they were not allowed to appeal. No such limitation was placed on the U.S. Trustee's right to appeal, however, indicating that Congress did not intend to limit the U.S. Trustee's appellate standing. We agree with the Sixth Circuit's analysis in *Revco,* and sustain the U.S. Trustee's standing to seek review here.

## JURISDICTION OF THE COURT OF APPEALS

■ (1) Another threshold question is whether relief is properly sought from the

court of appeals pursuant to 28 U.S.C. § 1291 [8] or 28 U.S.C. § 1651,[9] or whether an appeal should first have been taken to the district court pursuant to 28 U.S.C. § 158(a) [10]. The district judge who heard this case assumed throughout that he was acting as a bankruptcy judge, rather than as a district judge sitting in bankruptcy. If the decision to appoint Mr. Fuste as trustee were, in fact, that of a substitute bankruptcy judge, appeal therefrom would lie to the district court pursuant to 28 U.S.C. § 158(a). If the decision was that of a district court sitting *in* bankruptcy, however, appeal from a final decision would lie to the court of appeals pursuant to 28 U.S.C. § 1291.

We hold that when Chief District Judge Perez–Gimenez sat in lieu of the recused bankruptcy judges, he was exercising the district court's original jurisdiction over bankruptcy cases rather than acting as if he himself were a temporary member of the bankruptcy court. An appeal, therefore, lies to the court of appeals pursuant to 28 U.S.C. § 1291. Our view is the same as that of the Ninth Circuit in *In re Manoa Finance Company, Inc.*, 781 F.2d 1370 (9th Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). There as here a district judge assumed control of a bankruptcy case following a bankruptcy judge's recusal.

The Ninth Circuit held that a bankruptcy decision by a district judge can only be a decision of the district court. The judge's assertion that he is "sitting as the bankruptcy court" does not change this fact. *Id.* at 1372. In holding that the appeal from the district judge's decision was properly made to the court of appeals, the court surmised that "Congress's concern [when it passed the Bankruptcy Amendments and Federal Judgeship Act of 1984] may have been to prevent an appeal to the court of appeals before an Article III judge had ruled on an issue." *Id.* This concern would, of course, not be present when the original decision is made by an Article III district judge. *Id.* The Ninth Circuit also emphasized how awkward it would be if the rulings of a district judge were reviewed by a colleague (or, even more so, by a panel of Article I bankruptcy judges, pursuant to 28 U.S.C. § 158(b)). *Id.* An appeal to the court of appeals under 28 U.S.C. § 1291 makes far more practical sense here than an appeal to the district court under 28 U.S.C. § 158(a). *See also In re Apex Oil Co.*, 884 F.2d 343, 346 (8th Cir.1989) (appeal from decision of district court judge should not be heard by another district court judge); *Matter of Bishop, Baldwin, Rewald, et al.*, 856 F.2d 78, 79 (9th Cir.1988) (appellate jurisdiction over appeals from district judges sitting in bankruptcy exists under 28 U.S.C. § 1291); *Matter of Hawaii Corp.*, 796 F.2d 1139, 1141 (9th Cir.1986) (same).

■ (2) A remaining threshold question is whether the order appointing Mr. Fuste as trustee was "final" or otherwise reviewable by appeal or mandamus. City Federal argues that the order is neither a "final decision" under § 1291 nor an appealable collateral order under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and that mandamus under § 1651 is, likewise, not an appropriate vehicle for review in this case. We disagree.

The difficulty is less in deciding that we have jurisdiction to review the order than in determining which route to follow, ap-

---

8. The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States.... 28 U.S.C. § 1291.

9. The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. 28 U.S.C. § 1651.

10. The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving. 28 U.S.C. § 158(a).

peal or mandamus. We hold that the court's order of appointment, being a final decision of a significant and discrete dispute (i.e., a dispute over the authority and procedure for appointing a trustee, culminating in the court's appointment of Mr. Fuste contrary to the U.S. Trustee's wishes) is appealable. *See In re Saco Local Development Corp.*, 711 F.2d 441, 445 (1st Cir.1983); *Tringali v. Hathaway Machinery Co., Inc.*, 796 F.2d 553, 557–58 (1st Cir.1986); *In re American Colonial Broadcasting Corp.*, 758 F.2d 794, 801 (1st Cir.1985). *See also Dalkon Shield Claimants v. A.H. Robins Co., Inc.*, 828 F.2d 239 (4th Cir.1987) (district court order denying creditors' committee's request for trustee's appointment is a final order that is immediately appealable under § 1291); *In re Revco D.S., Inc.*, 898 F.2d 498, 499–500 (6th Cir.1990) (denial of U.S. Trustee's right to compel the appointment of an examiner is a final order); *In re Homer Arth Well No. 1*, 529 F.2d 1272 (6th Cir.1976) (district court order vacating appointment of trustee and substituting a different trustee is appealable).

It seems plain that the decision of an appeal from the court's order here could not be meaningfully postponed until the end of the entire Chapter 11 proceeding. If an appeal were postponed until a plan of reorganization were confirmed, there would be no satisfactory way to vindicate the U.S. Trustee's right to appoint, as there is no authority to appoint a new trustee after confirmation. To be sure, the plan of reorganization presided over by the current trustee could be rejected, enabling appointment of a new trustee, but to reject the plan simply to vindicate the U.S. Trustee's

appointment power would be grossly unfair to the creditors.

■ While, therefore, we hold that the district court's order appointing Mr. Fuste over the protest of the U.S. Trustee is a presently appealable final decision under § 1291,[11] we have no doubt that, were appeal not available, a writ of mandamus would also lie. The U.S. Trustee is, as we later discuss, clearly entitled to the relief he requests. He also faces irreparable harm if relief is denied since "an end-of-case appeal [would be] ineffectual [and would] leave legitimate interests unduly at risk." *In re Recticel Foam Corp.*, 859 F.2d 1000, 1006 (1st Cir.1988). A writ of mandamus is appropriately issued "to confine the [district court] to a lawful exercise of its prescribed jurisdiction." *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). Here, as we find, the district court's appointment of a trustee amounted, in effect, "to a 'judicial usurpation of power'." *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967), quoting *DeBeers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217, 65 S.Ct. 1130, 1132, 89 L.Ed. 1566 (1945). This court has issued mandamus in cases involving fundamental challenges to the authority of the district court to act in particular areas. *See, e.g., In re United States*, 565 F.2d 173 (1st Cir.1977); *In re Arvedon*, 523 F.2d 914, 916 (1st Cir.1975); *In re Ellsberg*, 446 F.2d 954, 956 (1st Cir.1971); *In re Melvin*, 546 F.2d 1, 2 (1st Cir.1976).

Since, however, appealability plainly exists under "the more relaxed standard of finality ... under [section] 1291 traditionally assigned bankruptcy appeals," we review the challenged order under our sec-

---

11. We do not accept City Federal's argument that because this appeal is under 28 U.S.C. § 1291 rather than 28 U.S.C. § 158(d), the finality rules applied in non-bankruptcy matters must be strictly followed. *See Hawaii Corp.*, 796 F.2d 1139 (9th Cir.1986). As our decisions in *Saco* and other cited cases illustrate, this circuit follows the Fourth Circuit's approach in *A.H. Robins v. Piccinin*, 788 F.2d 994 (4th Cir.1986): "While section 1291 limits jurisdiction to appeals from 'all final decisions of the district courts,' the concept of finality under such statutes has traditionally been applied 'in a more

pragmatic and less technical way in bankruptcy cases than in other situations.'" *Id.* at 1009, quoting *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir.1985). A "proceeding" in bankruptcy, as defined by the Supreme Court, is not the overall liquidation or reorganization but "an individual matter of an administrative character ... presented in the ordinary course of the administration of the bankrupt's estate," *Taylor v. Voss*, 271 U.S. 176, 181, 46 S.Ct. 461, 463, 70 L.Ed. 889 (1926). In this case, the district court's order brought to a close the "relevant judicial unit for purposes of finality." *Tringali*, 796 F.2d at 558.

tion 1291 appellate powers. *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1009 (4th Cir.1986).

## THE PROCESS FOR APPOINTING A CHAPTER 11 TRUSTEE UNDER THE BANKRUPTCY CODE AMENDMENTS

We turn now to the merits of the U.S. Trustee's appeal. The governing statute in this case, 11 U.S.C. § 1104(c), provides that

> If the court orders the appointment of a trustee or an examiner, ... *then the United States trustee,* after consultation with the parties in interest *shall appoint, subject to the court's approval,* one disinterested person other than the United States trustee to serve as trustee ... in the case (emphasis supplied).

The plain meaning of this language, its legislative history, and the interpretation given to this provision by the courts all dictate a reversal of the district court's order appointing Mr. Fuste as trustee in the Plaza de Diego Shopping Center bankruptcy case. We find further that the court's equity powers under 11 U.S.C. § 1104(c) are insufficient to provide an independent ground for the affirmance of this order.

### 1. Statutory Language

In attempting to interpret the meaning of a statute, a court should look first to its language. "The 'plain purpose' of legislation ... is to be determined in the first instance with reference to the plain language of the statute itself." *Board of Governors of the Fed. Reserve Sys. v. Dimension Financial Corp.,* 474 U.S. 361, 373, 106 S.Ct. 681, 688, 88 L.Ed.2d 691 (1986). *See also Burlington Northern R.R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1859–60, 95 L.Ed.2d 404 (1987) ("when we find the terms of a statute unambiguous, judicial inquiry is complete"). The statute plainly states that "the *United States trustee* ... *shall appoint,* subject to the court's approval, *one disinterested person* ... to serve as trustee ... in the case." This directive is obviously not consistent with the insistence of the district court that it is allowed to make the appointment.

### 2. Legislative History

The legislative history of the statute [12] indicates that the office of U.S. Trustee was created by Congress for the express purpose of taking on many of the ministerial and administrative duties previously borne by bankruptcy judges—including the appointment of trustees. Contrary to the district court's opinion that the statute was not "meant to preclude the court from requiring the submission of more than one qualified candidate so as to expedite the procedure in a particularly urgent case," 103 B.R. at 17, the statute appears to have been intended precisely to preclude such a result.

Prior to the passage of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, 100 Stat. 3088 (1986) (the "1986 Act"), the appointment of trustees had been a function of the bankruptcy courts. This system had been fraught with problems, however; and, under an earlier act, the Bankruptcy Reform Act of 1978, 11 U.S.C. § 151104, Pub.L. No. 95–598 (repealed 1986) (the "1978 Act"), Congress had provided—in language identical to the current section 1104(c)—for U.S. Trustees to appoint operating trustees in bankruptcy proceedings in 18 pilot program districts. The 1986 Act extended the U.S. Trustee pilot program so as to become a permanent, nationwide program. It amended the Bankruptcy Code to provide for the comprehensive role of the U.S. Trustees. Among the changes was an amended 11 U.S.C. § 1104(c), the statutory provision governing the appointment of trustees in Chapter 11 cases. The pre-amendment version of section 1104(c) provided that "the court shall appoint one disinterested person

---

12. Section 1104(c) was added to the Bankruptcy Code through enactment of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, 100 Stat. 3088 (1986) (the "1986 Act").

to serve as trustee ... in the case." The 1986 amendment substituted the words "U.S. trustee" for "the court." [13]

The legislative history behind section 1104 of the 1978 Act, and the history of the 1986 amendments, shows that Congress decided to shift the power of appointment from judges to the U.S. Trustees for two reasons: (1) to free bankruptcy judges from burdensome administrative tasks and, more importantly, (2) to avoid the possibility or appearance of a conflict of interest necessarily arising when a judge must decide matters litigated between a trustee of his own selection and other parties to the bankruptcy.[14] *See generally* H.R.Rep. No. 595, 95th Cong., 2d Sess. 88–99, *reprinted in* U.S.Code Cong. & Admin.News 5787, 6049–6061 (1978) (hereinafter "the 1978 Legislative History"). Of particular concern to Congress was the operation of "bankruptcy rings" among bankruptcy lawyers and the courts, within which judges appointed practitioners well known to them as trustees, set their compensation, and then ruled on disputes between their hand-picked candidates and parties to the bankruptcy.[15]

The 1978 Act sought to remedy these problems by relegating judges to a more predominately judicial role. In the pilot districts, U.S. Trustees were "to perform the supervisory and appointing functions [previously] handled by bankruptcy judges." 1978 Legislative History at 6062. Under the new scheme, once the bankruptcy judge had decided that a trustee was necessary to administer the debtor's affairs, it became the duty of the U.S. Trustee to select the case trustee and appoint him or her—subject, of course, to the approval power of the court. Confirmation was normally expected to be forthcoming unless there were some impropriety in the appointment. As the House Report explains:

> If the court determines that a trustee is to be appointed in the case, the bill separates the court from the appointment process. The United States trustee will make the appointment, after consultation with parties in interest and subject to approval by the court. The court's approval should in most cases be perfuncto-

---

**13.** Section 219 amends 11 U.S.C. 1104 to make it clear that the U.S. Trustee can seek the appointment of a trustee or examiner in a chapter 11 case. If the court orders the appointment to be made, *the U.S. Trustee makes the appointment,* subject to the court's approval. H.R.Rep. No. 764, 99th Cong., 2d Sess. 28, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5241 (1986) (emphasis added) (hereinafter the "1986 Legislative History").

**14.** The House Report states that

[i]t is enough of a reason for change that the[ ] functions and duties of the bankruptcy judge [related to the appointment and supervision of the trustee] constitute no part of his judicial responsibilities, and divert him from the important judicial and legal work that must be done in bankruptcy cases. However, if that were the system's only vice, adjustments less than those proposed in the bill might suffice. Deeper problems arise because of the inconsistency between the judicial and administrative roles of the bankruptcy judges. The inconsistency places him in an untenable position of conflict, and seriously compromises his impartiality as an arbiter of bankruptcy disputes.

1978 Legislative History at 6050.

**15.** The House Report notes that

... [I]n consumer cases ... the bankruptcy judges appoint their friends as trustees in the vast majority of cases.... [L]itigants and observers frequently object to the apparent, and in many cases real, cronyism between bankruptcy judges and their trustees. The "bankruptcy ring" is reflected not only in the appearance of unfairness in bankruptcy judges ruling in litigation between their appointees and third parties, but also in the awarding of compensation by the appointing authority.

　．　　　．　　　．　　　．　　　．

There is an unusually close relationship between the bankruptcy judges and the bankruptcy bar, especially the debtors' and trustees' bars. They are in frequent contact with the judge as a result of the necessity for the judge's review of the administrative actions of the trustee or debtor in possession. Usually, a trustee is appointed by the bankruptcy judge, and is appointed in numerous cases before the same judge. Debtors' attorneys make frequent appearances in the same court representing numerous different debtors. All of these contacts and relationships have led to a feeling among nonbankruptcy practitioners that there is a "bankruptcy ring" that has an inside track on all bankruptcy matters, including the judges' favoritism.

1978 Legislative History at 6056.

ry, and is available mainly as a safeguard against impropriety on the part of the United States trustee. Under current chapter X, the court appoints the trustee. The court's involvement in the process not only appears to be improper when the court must later rule in litigation between the court's appointee (the trustee) and an adverse party, but had also led to cronyism in some instances, and unqualified or incompetent trustees. *Again, the separation of the court from the administration of the case should lead to fairer and more efficient administration.*

1978 Legislative History at 6194.

Following the experience of the pilot program, the U.S. Trustee system was made permanent and universal in the 1986 Act. The legislative history behind the 1986 Act reiterates and affirms a belief by its Congressional supporters that judge-appointed trustees had been the cause of serious problems that needed to be addressed.[16]

The House Report [17] explains that to help accomplish the separation of judicial and administrative functions, "[t]he U.S. Trustees [had been] given responsibility [in the pilot program] for many of the administrative functions that had previously been handled by the bankruptcy courts (such as appointing individuals to serve as private trustees to handle administrative duties in chapter 7 and chapter 13 cases ... and appointing a trustee in Chapter 11 reorganization proceedings when ordered by the court)." *Id.* The 1986 Act adopted the pilot program on a permanent, nationwide basis.

**3. Judicial Interpretation**

In determining the respective roles of the courts and the U.S. Trustees under the Bankruptcy Code amendments, courts must necessarily accept the plain import of the legislative language, supported by the legislative history. This court in *In re Kontaratos,* 15 B.R. 298, 299–300 (Bankr. 1st Cir.1981) thus stated,

As the legislative history of the Bankruptcy Code indicates, the establishment of the office of United States trustee is designed to accomplish the separation of judicial and administrative functions currently performed by bankruptcy judges.

. . . . . .

The U.S. Trustee, rather than the court ... will appoint trustees, supervise administration of bankruptcy cases, and exercise any other function prescribed by the Attorney General....

*See also In re Capital Services & Investments, Inc.,* 90 B.R. 382, 383 (Bankr.C.D. Ill.1988) ("It is clear from [the] statute that once the Court orders the appointment of a trustee, it is the United States Trustee that actually selects and appoints the trustee.") Indeed, Congress's decision to vest in the U.S. Trustee the authority to select the Chapter 11 operating trustee in the U.S. Trustee has been held even to limit somewhat the grounds on which a court may veto the U.S. Trustee's appointment of a trustee. *In re Lathrop Mobile Investors,* 55 B.R. 766, 768 (Bankr. 9th Cir.1985) (bankruptcy court may not refuse to confirm the U.S. Trustee's appointee for reason that the proposed trustee was not drawn from the county's bankruptcy panel).

---

**16.** The House Report on the 1986 bill contains the following language:

The handling of both administrative and judicial functions by the bankruptcy courts had eroded the public confidence in the bankruptcy system. An example of this could be seen in the appointment by the bankruptcy court of private trustees to administer bankrupt debtors' estates. In many cases, these trustees appeared in bankruptcy court before the very same judges who appointed them to make recommendations regarding matters of the estate. In such circumstances, a trustee would often be reluctant to take positions contrary to the judges who appointed the trustee, even though a trustee was supposed to be an impartial administrator of the estate. This awkward relationship between trustees and judges created an improper appearance of favoritism, cronyism, and bias, and generated great disrespect for the bankruptcy system.

H.R.Rep. No. 764, 99th Cong., 2d Sess. 17–18, *reprinted in* 1986 U.S.Code Cong. & Admin. News 5227, 5230 (1986) (hereinafter the "1986 Legislative History").

**17.** *See* note 19, *supra,* for citation.

## LIMITS ON THE COURT'S POWER

### 1. Power To Appoint Not Comprehended in Power To Approve

 In the face of Congress's clear intent in passing the Bankruptcy Code amendments, as demonstrated in both the plain words of the statute and the legislative history—that is, to vest the appointment power in the U.S. Trustee—the district court sought to justify its action of appointing the operating trustee on two grounds. The first was its view that the act of appointing the trustee lay within the power of ultimate approval conferred upon the court by the statute, and its corollary view that the order to nominate three candidates for trustee did not infringe the statutory power of the U.S. Trustee to appoint, but instead merely telescoped into a single procedure for three separate candidates the time-consuming process of searching for a candidate, consulting with the parties in interest, appointing the trustee, and getting court approval.

The error in this position stems from the fact that the power to approve is not the power to appoint. In making the appointment, the court went well beyond its statutory power merely to *approve* the appointment made by the U.S. Trustee. Likewise, the power to nominate is not the power to appoint, and by relegating the U.S. Trustee to the role of nominating three candidates for trustee, the court deprived the U.S. Trustee of his right and power under the statute to appoint the operating trustee in the Plaza de Diego reorganization proceeding. The order to the U.S. Trustee to submit the names of three candidates for trustee deprived the U.S. Trustee of his appointment authority in one additional way as well: it provided that parties in interest other than the U.S. Trustee could "submit additional candidates for [the court's] consideration." 103 B.R. at 15.

The legislative history makes it abundantly clear that the amendment to 11 U.S.C. § 1104(c) was adopted for the express purpose of taking the power of appointment away from the court and giving it to the U.S. Trustee. To construe the statutory language so as to give effect to its express import does not amount to elevating form over substance, as City Federal charges in its brief; nor can we agree with City Federal's assertion that the procedure followed by the bankruptcy court violated neither the substance nor the spirit of section 1104(c). In so ruling, we do not pass judgment on the relative effectiveness of the U.S. Trustee program vis-a-vis the earlier process of judicial appointments, nor do we comment on serious criticisms that have recently been levelled against the U.S. Trustee Program. *See Report of the Federal Courts Study Committee, Part II*, pp. 77–78 (April 2, 1990). Whether the current procedures are desirable is immaterial. Courts may not override valid Congressional enactments. We hold that the district court exceeded its powers when it ordered the U.S. Trustee to nominate three candidates for trustee and later when it unilaterally appointed a trustee who was the nominee of one of the creditors.

### 2. Extent of the Court's Equity Powers

The second justification given by the court for its action is that even if the power to appoint is not comprehended in the power to approve, equitable considerations mandated an expedited approval procedure, pursuant to the broad equity power granted to the court by 11 U.S.C. § 105(a). ("The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.") The equitable considerations mentioned by the court as having necessitated its order were: (1) the urgency of the situation, i.e., the deterioration of the debtor's assets that had already begun and was likely to continue in the absence of a trustee, (2) the failure of the U.S. Trustee to move expeditiously to appoint a trustee acceptable to all of the creditors, and (3) the failure of the U.S. Trustee to consult adequately with the major creditors in regard to the trustee to be appointed, as required under section 1104(c).

 Even as a court of equity, however, the bankruptcy court's equitable discretion is limited and cannot be used in a manner inconsistent with the commands of the

Bankruptcy Code. *See, e.g., Johnson v. First Nat'l Bank of Montevideo, Minn.,* 719 F.2d 270, 273–75 (8th Cir.) *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1983) (bankruptcy court lacked authority under general equitable power section, 11 U.S.C. § 105(a) to stay indefinitely expiration of statutory redemption period created by state law in connection with real estate mortgage foreclosure). In the instant context, the court's power is limited to ensuring that the U.S. Trustee carries out his duties under the statute.

> If [the U.S. Trustee] fails to perform *his statutory duties,* the bankruptcy court has ample authority under § 105(a) of the Code to order him to act. If he continues to refuse, the court may act in his stead and make whatever other appropriate orders may be necessary. The trustee's performance is essential to the bankruptcy system. Therefore, he can and will be ordered to perform those tasks which the bankruptcy court determines fall within the scope of his responsibility.

*In re Kontaratos,* 15 B.R. 298, 302 (Bankr. 1st Cir.1981) (emphasis added).

 As emphasized in *In re Kontaratos,* the equitable powers of the court are ample for it to order the U.S. Trustee to perform his statutory duties. The court had full power to order the U.S. Trustee to appoint a Chapter 11 trustee. Likewise, it could conceivably have exercised its inherent and statutory powers as a court of equity to order the U.S. Trustee to consult further with creditors if it had found that the degree of consultation undertaken by the trustee was inadequate under the statute. Indeed, one court dealt with the identical problem—the failure of the U.S. Trustee to consult adequately with the parties in interest in regard to the individual to be appointed as trustee—by ordering the U.S. Trustee's appointee to appear at a hearing at which the creditors would be given the chance to examine him as to his credentials and disinterestedness.[18] *In re*

---

**18.** The court reasoned that the creditors should be given an opportunity to offer their input into a decision as important as the selection of the trustee because of their vital interest in the case stemming from their substantial exposure to loss. *In re Capital Services & Investments, Inc.,* 90 B.R. 382, 385 (Bankr.C.D.Ill.1988). It should be noted in this regard, however, that neither the statute nor the case law imposes upon the U.S. Trustee any duty to appoint as trustee the individual who is the first choice of one or more of the creditors. *In re Edward William Federowicz,* 1989 WL 200942, 1989 U.S. Dist. Lexis 16555 at *8 (D.Ill. August 7, 1989) (unpublished) ("The rule does not state ... that the U.S. Trustee is compelled to abide by the interested party's wishes."); *In re Capital Services,* 90 B.R. at 384 (parties in interest have no veto power over the appointment of the trustee).

"In determining whether to approve an appointment, the Court looks at three factors: (1) whether the United States Trustee has consulted with parties in interest; (2) whether the trustee is a disinterested person; and (3) whether the United States Trustee has abused his discretion [ (by, for example, appointing a trustee of inadequate qualifications) ]," *id.* at 386. *See also In re Ruffin, Inc.,* 10 B.R. 862, 863–64 (Bankr.D.R.I. 1981) (U.S. Trustee's appointment rejected by court due to lack of experience in restaurant business); *In re Cardinal Industries, Inc,* 113 B.R. 378 (Bankr.S.D.Oh.1990) (U.S. Trustee's appointment rejected by court because appointee's credentials, although impressive, did not in-

clude experience in specialized areas required for management of the bankruptcy estate).

In *In re Capital Services,* the U.S. Trustee had refused to disclose to the creditors the name of the person he intended to appoint as trustee and had informed the parties in interest that "anyone trying to change his decision would be brought up on charges before the attorney disciplinary commission," *id.* at 384. He took the position that he was required to have minimal consultation with interested parties and that the Court should not question his representation that his appointee was a disinterested party. The court rejected these arguments and responded by stating that "the consultation requirement of § 1104(c) requires the United States Trustee to make *a good faith attempt to get input* from the parties in interest," *id.* at 385 (emphasis added), and that there should be "consultation and cooperation between the creditors and the United States Trustee." *Id.* at 384. *See also In re Ruffin,* 10 B.R. at 863 (inadequate consultation where, despite certification to the contrary, parties were never contacted by the U.S. Trustee regarding the appointment of a trustee).

We offer no comment on whether or not the degree of consultation with the parties in interest engaged in by the U.S. Trustee in the case at bar was sufficient under the good faith standard. If the district judge had found it was insufficient, however, he could have availed himself of his equitable powers to order further consultation or to conduct a hearing on the appointee's experience and disinterestedness.

*Capital Services & Investments, Inc.*, 90 B.R. 382, 386 (Bankr.C.D.Ill.1988). The court also could have invoked its equitable powers to order the U.S. Trustee to act within a reasonable time frame. It could have imposed interim controls on the debtor to prevent further deterioration of the debtor's estate until a trustee or an examiner could be appointed.[19]

 We need not attempt to delineate at this time the courses of action that would have been open to the district court had the U.S. Trustee utterly refused to appoint a trustee when ordered to do so by the court. Here, where the U.S. Trustee was plainly willing to appoint a trustee, it was an ultra vires act for the district court to supplant the U.S. Trustee in appointing a trustee.[20] The court had no power under the statute to appoint a trustee, and its equitable powers did not cure the infirmity. Section 105(a) does not confer upon the court the power to ignore the express commands of the statute.

3. Charges of Cronyism by the U.S. Trustee No Justification

 City Federal's final argument is that the district court was justified in its actions of requiring the U.S. Trustee to nominate three candidates for the position of trustee and later appointing the candidate of the court's choice, for the reason that the U.S. Trustee was guilty of impropriety. Such impropriety was allegedly manifested in the U.S. Trustee's refusal to consider Fuste—a candidate whom City Federal asserts was better qualified than the U.S. Trustee's choice. Such refusal, argues City Federal, manifests the very cronyism and favoritism that the statutory amendments were enacted to protect against; hence, the district court's act of appointing Fuste in place of the favorite of the U.S. Trustee, rather than violating the statute, instead actually gave effect to its spirit and to its underlying purpose of protecting the impartiality of the appointment process. For this reason, argues City Federal, the appointment could not have violated the statute. Indeed, in the view of City Federal, all of the other (alleged) breaches of duty on the part of the U.S. Trustee that City Federal has pointed out—including his failure to act promptly, his failure to give adequate consideration to the wishes of the creditors, and his failure to cooperate with the court in appointing a trustee who would be acceptable to all of the parties in interest—can be regarded as additional evidence of the U.S. Trustee's improper motive—a desire to appoint his own favorite regardless of qualifications.

 Again, however, City Federal's arguments must fail. Even if the district court had been motivated by a finding of impropriety on the part of the U.S. Trustee (there was no such express finding in this case), the court could only react within the

He would have been without power, however, to order the U.S. Trustee to obtain the consent or approval of all the creditors, or even of the major creditors, because the statute imposes no such requirement.

**19.** For example, the Creditors' Committee on July 10, 1990 submitted an "Emergency Motion Requesting Provisional Remedies" stating that "[i]n view of the fact that the final selection of an operating trustee may take time, the Creditors' Committee requests that an order be entered establishing certain provisional procedures to be implemented until such time as a trustee is appointed." The motion outlined several requested procedures such as (1) an order to be issued to all tenants in the shopping center to deposit their rent directly to the debtor's bank, (2) an order that all payments be made by check with the exception of a small petty cash fund; (3) an order that each check prepared be accompanied by a voucher; and (4) an order

that all checks be prepared on Thursdays and that a list of the checks, together with the vouchers, be delivered to an independent accounting firm, and so forth. The purpose of these controls was to protect the assets of the estate until a trustee could be appointed. The district court could clearly have imposed such controls.

**20.** City Federal argues that since the reason for transferring the appointment power from the bankruptcy courts to the U.S. Trustee was to address the abuses that had grown up in the form of "bankruptcy rings" and cronyism, the statute should not apply in the instant case because the judge was not a regular bankruptcy judge but was instead a district judge sitting in the place of the district's two bankruptcy judges, both of whom had recused themselves. That the reasons for Congress's decision to adopt a particular rule may not be present in an individual case, however, is no justification for failing to give effect to the rule in that case.

confines of its authority, i.e., it could refuse to approve the appointment for this valid reason, but could not itself usurp the power of appointment. The legislative history of the Bankruptcy Code amendments indicates that the court's power to approve the appointment of operating trustees was conferred "mainly as a safeguard against impropriety on the part of the United States trustee." 1978 Legislative History at 6194. Hence, the weapon Congress intended the court to wield in guarding against improprieties on the part of the U.S. Trustee in the appointment process was to refuse to approve the U.S. Trustee's appointment—not to supplant the U.S. Trustee as the appointing agent. Congress plainly believed that the mechanism of (1) appointment by the U.S. Trustee and (2) approval by the bankruptcy court, provided sufficient checks to thwart abuses. We note that the court's approval discretion is broad.[21] We will not disturb the district court in the exercise of its discretion not to approve unless it abuses that discretion.[22]

## CONCLUSION

Because we hold that the district court sitting in bankruptcy was without power to require the U.S. Trustee to nominate three candidates for operating trustee in this proceeding, we vacate the order of the district court directing the U.S. Trustee to nominate three candidates for operating trustee. Likewise, because the district court was without power to appoint a trustee of its own choosing, the order of the court appointing Mr. Fuste as operating trustee in the Plaza de Diego Shopping Center Chapter 11 reorganization proceeding is also

vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded. Each party is to bear its own costs.*

---

**21.** "[The] selection [of the U.S. trustee] is subject to court approval, in order to insure against bad appointments. However, the scope of the court's review of the United States trustee's discretion will be limited. [The United States trustee is permitted to select a person that is not a member of the panel of private trustees....]" 1978 Legislative History at 6065.

**22.** *See In re Capital Services,* 90 B.R. at 383, 385–86, for a discussion of the limitations on the discretion of the U.S. Trustee in appointing the candidate of his choice. *See also In re Ruffin, Inc.,* 10 B.R. 862, 863–64 (Bankr.D.R.I. 1981); note 19, *supra.*

For an indication of the kinds of limitations that attend the exercise by the district court of its power to approve or refuse to approve the U.S. Trustee's appointees, *see In re Lathrop Mobile Investors,* 55 B.R. 766 (Bankr.App. 9th Cir. 1985). In *Lathrop* the bankruptcy judge, in chambers, had refused to confirm the U.S. Trustee's appointee because the proposed trustee was not drawn from the county's bankruptcy panel. The appellate panel found that the bankruptcy judge had abused his discretion and reversed for the "fundamental reason [that] the trial court's procedure was inappropriate ..." *id.* at 768–69.