### In re Don and Elizabeth JOHNSON, Debtors.

**Bankruptcy No. 1–82–01460.**

United States Bankruptcy Court, N.D. California.

June 27, 1990.

---

Harvey W. Hoffman, Bronson, Bronson & McKinnon, Santa Rosa, Cal., for trustee.

Ford Elsaesser, Elsaesser, Jarzabeck & Buchanan, Sandpoint, Idaho, and Eric Davis, Merrill & Arnone, Santa Rosa, Cal., for creditor, J.D. Lumber.

Nancy L. Case, Beyers, Costin & Case, Santa Rosa, Cal., for debtor.

## ORDER REGARDING CONTACTS WITH U.S. TRUSTEE

ALAN JAROSLOVSKY, Bankruptcy Judge.

The Chapter 7 trustee in this case, Edward M. Walsh, is involved in litigation with the principals of J.D. Lumber, Inc., and has obtained a judgment in federal district court against them for, among oth-

er things, RICO violations. The matter is now on appeal.

While the lawsuit was pending J.D. Lumber, wearing the mantle of a creditor in the case, requested certain information from Walsh regarding the administration of the case. Walsh questioned the standing of J.D. Lumber, noted that much of the information requested was in the court file, and declined to supply the remainder, citing as his reason the district court litigation. Thus, a real dispute developed between the parties as to whether, as a matter of law, J.D. Lumber had standing and was entitled to documents in Walsh's possession.

At that point in what was clearly acrimonious relations between Walsh and J.D. Lumber, the proper way to proceed was to place the matter before the court. Bankruptcy Rule 2004 empowers the court, upon motion of any party, to order the examination of any entity. However, that is not the way J.D. Lumber proceeded. Instead, on November 22, 1989, it sent a letter to the U.S. Trustee setting forth its legal arguments that it had standing to obtain the information it sought and enlisting the U.S. Trustee's aid in obtaining it. This request, and the apparent willingness of the U.S. Trustee to become involved in the dispute, are of grave concern to the court.

█ The duties and powers of the U.S. Trustee are set forth in 28 U.S.C. section 586. They include the power to supervise the *administration* of Chapter 7 cases by reviewing fee applications, making sure that reports are filed, and taking action to avoid delay in case administration. The U.S. Trustee is not empowered to adjudicate disputes over matters of law, such as whether a party has standing to appear in a case or whether the case trustee must disclose certain information. Indeed, the assumption of such a role would be a violation of the constitutional doctrine of separation of powers. *In re Sharon Steel Corp.*, 100 B.R. 767, 772 (Bkrtcy.W.D.Pa. 1989). When a judicial issue is created, it becomes a matter for the court, not the U.S. Trustee. *In re Public Service Co. of*

*New Hampshire*, 89 B.R. 1014, 1021 n. 9 (Bkrtcy.D.N.H.1988).

The U.S. Trustee must be very circumspect in his conduct regarding individual cases, because while it is unconstitutional for him to exercise judicial functions he has the very real practical power to do so where the case trustee is a party to the dispute. Since the U.S. Trustee has the sole power to name trustees, he has the power of economic life or death over every case trustee. A case trustee who fails to toe the U.S. Trustee's line may well find himself out of work, blackballed from being assigned any future cases. A U.S. Trustee who abuses his position by directing a case trustee to take a particular action in a particular case, rather than directing the parties to place the matter before the court, effectively violates the Constitution as much as if Congress had assigned adjudication of bankruptcy disputes to the Department of Justice.

Moreover, the failure of the U.S. Trustee to strictly limit his role to administrative matters creates the spectre that bankruptcy cases can be controlled through the political process. Many debtors, even though insolvent, may have considerable political leverage due to powerful associations formed before bankruptcy. As an employee of the Executive Branch of government, the U.S. Trustee is subject to political pressure. The court cannot allow political influence to have an effect on the outcome of bankruptcy cases.

The goal of the U.S. Trustee program is to divorce the bankruptcy judge from the administrative aspects of bankruptcy cases, so that he or she can be a fully neutral adjudicator of disputes. *Matter of Hadar Leasing Intern. Co., Inc.*, 11 B.R. 460, 461 (Bkrtcy.S.D.N.Y.1981). The U.S. Trustee must use great care to insure that he does not get involved in resolving judicial matters outside of court, by placing pressure on case trustees to act in one way or another. Where a party to a case has attempted to use the U.S. Trustee to seek advantage over a case trustee in matters which are properly raised in court, the court is compelled to use its powers under section 105(a) of the Bankruptcy Code to insure that the judicial process is not subverted.

Accordingly, it is hereby ordered that J.D. Lumber, its agents, employees and attorneys, shall not henceforth contact the U.S. Trustee or his employees or assistants in any manner regarding any dispute relating to its standing, the responsibility of Walsh to produce documents, or any other matter which is of a judicial nature. The U.S. Trustee shall take no action in such matters outside the court, nor shall he take any punitive action against Walsh for his failure to produce the information sought by J.D. Lumber. This order shall not be interpreted as prohibiting any party from reporting a bankruptcy crime, as set forth in 18 U.S.C. section 151 et seq., to the U.S. Trustee.

Upon request of a party filed and served within seven days of the date of this order, a hearing will be held on July 6, 1990, at 9:00 A.M. on whether this order should be made permanent. If no request for such a hearing is timely filed, this order shall be binding throughout the pendency of this Chapter 7 case.