**In re TYRONE F. CONNER CORPORATION, INC., Debtor.**

**Bankruptcy No. 91–15036–A–11K. MC No. UST–1.**

United States Bankruptcy Court, E.D.California.

March 6, 1992.

Memorandum Opinion Denying Alteration or Amendment March 31, 1992.

Carol D. Mills, for U.S. Trustee.

Robert J. Fletcher, for debtor.

Anthony G. Sousa, U.S. Trustee.

## OPINION

RICHARD T. FORD, Bankruptcy Judge.

### INTRODUCTION

On September 19, 1991, Debtor, Tyrone F. Conner Corporation, Inc., filed a voluntary petition for relief under Chapter 11 of the Code [1] by and through Robert J. Fletcher.

On December 16, 1991, the United States Trustee filed its Motion to Dismiss, Convert or Appoint a Trustee (MC # UST-1). That motion was subsequently noticed for hearing and heard January 23, 1992. At that hearing, this Court ordered the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(1) and (2).[2]

---

1. All references to the Code refer to the Bankruptcy Code as revised by the 1984 revisions.

2. The United States Trustee's motion was grounded upon continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation under 11 U.S.C. § 1112(b)(1); failure to file monthly operating reports, and specifically the report for October 1991, under 11 U.S.C. §§ 1104 and 1106; an unauthorized loan to a related debtor as appeared in the September 1991 monthly operating report; and the debtor's failure to provide proof of an existing debtor-in-possession bank account in accordance with the United States Department of Justice, Office of the United States Trustee Guidelines 3.5.2. It is upon these grounds that the Court found and held that

The January 23, 1992 Minute Sheet reflects that the United States Trustee ("UST"), as is consistent with the mandate of 11 U.S.C. § 1104, was to submit the name of a proposed trustee to the Court for approval. Should no appointment occur, this matter was to be continued to February 26, 1992.

On February 14, 1992, the UST filed its Statement of Inability to Appoint Chapter 11 Trustee. Based upon the UST's inability to appoint a Chapter 11 Trustee, the Debtor's alleged inability and failure to comply with the reporting requirements set out under the UST Guidelines, Debtor's alleged failure to comply with its fiduciary obligations imposed under the Code, and the failure to retain counsel, the UST requests that this Court convert the corporate case to Chapter 7.

Debtor filed its Verified Statement of Tyrone F. Conner in reply to the UST's motion on February 21, 1992. Debtor requests that the Court deny the UST's request to convert the case and points to several factors for consideration and in support of its position. Debtor advances that reorganization is still viable, that its worker's compensation insurance problem has been remedied, and that as its January 1992 operating reports indicate, business is on an upswing showing that the Debtor can operate profitably. Debtor also contends that it would be unfair to convert the case, in that of the six potential trustees contacted by the UST, five are located in Fresno and only one in Bakersfield. Debtor submits that other qualified trustee candidates exist in the Bakersfield area, specifically Gary Goldstick, that should be contacted.

Following argument at the hearing, the Court allowed Debtor through March 4, 1992, at 2:00 p.m. to contact Goldstick and communicate to this Court whether Goldstick had an interest in serving as the Chapter 11 Trustee.

Debtor's telephone communication from Robert J. Fletcher was received by this Court at 1:45 p.m. on March 4, 1992. Mr. Fletcher indicated that Goldstick is unwilling to serve as Chapter 11 trustee.

## APPEARANCES

This matter came on for hearing February 26, 1992. Carol D. Mills appeared for the United States Trustee. Although the Court previously ordered that Robert J. Fletcher could not represent the Debtor herein and two related debtors [3] because of potential conflicts, Mr. Fletcher appeared on behalf of Debtor's sole shareholder in this matter, and the Court has considered his argument. Tyrone F. Conner was also present at the hearing.

After receiving argument from Mills and Fletcher, this matter was taken under advisement pending Debtor's communication reference Mr. Goldstick's desire to serve as Chapter 11 trustee.

## JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334. Venue is proper under 28 U.S.C. § 1408. The District Court has generally referred these matters to the Bankruptcy Court for hearing pursuant to 28 U.S.C. § 157(a) and United States District Court, Eastern District of California General Orders 182 and 223. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (O). This Opinion constitutes this Court's findings of facts and conclusions of law.

## DISCUSSION

### I

■ Pursuant to this Court's directive at the February 26, 1992 hearing, communication was received from Debtor indicating that Gary Goldstick was not interested in serving as Chapter 11 trustee.

In addition to the UST's Statement of Inability to Appoint Chapter 11 Trustee, Mills advanced several other reasons at oral argument to support the UST's conten-

cause existed and that the interests of creditors warranted appointment of a Chapter 11 trustee.

3. Fletcher is counsel of record for Tyrone F. and Deborah J. Conner, individuals and joint debtors in Case # 91–15145–A–11K.

tion that conversion to Chapter 7 is warranted. They are as follows:

1) lack of and inability to obtain independent counsel for this corporate debtor;

2) unauthorized post-petition loans made to Debtor by insiders;

3) Debtor's unauthorized post-petition loans to related Chapter 11 debtors;

4) Debtor's inability to obtain worker's compensation insurance;

5) The loss of estate property through relief from the automatic stay and subsequent repossession and sale that Debtor contended was necessary to an effective reorganization;

6) Debtor's repeated and consistent failure to timely file monthly operating reports and provide copies to the UST;

7) Debtor's failure to pay the UST quarterly fees;

8) Lack of information as to whether the $3,500 retainer paid by Debtor to Mr. Fletcher has been refunded or transferred to new counsel;

9) Mr. Conner's unauthorized weekly draws of $780;

10) Failure to provide proof to the UST of a debtor-in-possession bank account; and

11) The assertion by the UST that some of the potential candidates for the Chapter 11 trustee position felt that this Debtor cannot operate profitably.

While the above factors independently or conjunctively certainly warrant appointment of a Chapter 11 Trustee as was initially sought by the UST and ordered, it does not necessarily follow that conversion is mandated at this juncture. As will be discussed in greater detail below, this Court is convinced that the UST has failed to diligently perform its statutory duties.

Addressing the UST's contentions mentioned above, it cannot be said the UST's inability to appoint a Chapter 11 Trustee warrants conversion, for there is insufficient evidence indicating that this would be in the best interests of creditors and the estate as mandated under 11 U.S.C. § 1112(b). In fact, the evidence before the Court indicates that net receipts for January 1992 were approximately $7,500. Debtor's principal also attests to having obtained worker's compensation insurance, thereby solving that problem for the estate. Moreover, he attests to, and the monthly operating reports show, that new receivables exceed current operations expenditures by $23,250.75.[4] Similarly, the schedules also reflect a positive remainder of $24,531.34 from accounts receivable after payments on post-petition debt.[5] These factors, at this early stage of the bankruptcy, are positive factors weighing favorably for Debtor's potential reorganization.

As to the remaining factors listed above, they collectively indicate that this corporate debtor is in need of competent management and counsel. While independent counsel has yet to be obtained, no evidence exists that debtor cannot obtain such counsel. The unauthorized loans certainly warrant appointment of a trustee, who upon taking control would undoubtedly cease such unauthorized practices. However, had Debtor been properly advised, such loans would most likely not have been made. As to the loss of estate property through relief from the automatic stay, repossession, and sale, and Debtor's alleged responses to those motions that such property was necessary for an effective reorganization, the Court has reviewed Debtor's only reply to a motion for relief (MC # DFB-1, filed December 16, 1991) and that reply is devoid of any such claim by Debtor. While potentially filed in the related cases, no such claim of need for an effective reorganization appears herein reference any property to which relief was granted.

As to Debtor's failure to timely file monthly operating reports, competent

4. This figure is obtained by deducting current debts under Schedule F from new receivables in Schedule G ($72,169.39 − $48,918.64 = $23,250.75).

5. This figure is obtained by deducting payments made on post-petition debts in Schedule F from current collection of outstanding accounts receivables in Schedule G ($82,197.34 − $57,666.00 = $24,531.34).

management and counsel could remedy this defect. Reference payment of the quarterly fees, again, competent management could easily remedy this failure, especially considering the modest sum of $1,250 that is allegedly past due. Similarly, trustee or competent business manager could determine the whereabouts of the $3,500 retainer through simple inquiry. (A review of the 2016(b) disclosure indicates that $500 of that amount was used to pay the filing fee for this Chapter 11 case.) As to Mr. Conner's unauthorized weekly draws, those will cease by virtue of this Court's order dated March 4, 1992. Schedule J(1) for each month since the inception of the case indicates the existence of a debtor-in-possession account. Any trustee appointed and subsequently approved by this Court could easily verify that all bank signature cards state the account is a "debtor-in-possession" account. Moreover, and most probably overlooked by the UST, is that the January 1992 operating reports clearly indicate the opening of two new bank accounts with Security Pacific National Bank, specifically designated as "DIP" accounts for payroll and general accounts of Central California Concrete Cutting Company, Inc.[6] Accordingly, the Court is satisfied that approved debtor-in-possession accounts exist and this factor has no bearing on this Court's consideration of whether or not to convert this case.

Lastly, Mills indicated at the hearing that various people contacted as potential Chapter 11 trustees did, in some instances, indicate that this Debtor could not operate profitably. Review of the UST's Statement of Inability to Appoint Chapter 11 Trustee indicates that contrary to Mill's assertion at oral argument, only one potential candidate allegedly had this perception of the case. This assertion set forth in the UST's Statement at page 2:21 fails to set forth a sufficient basis for such a conclusion. Nothing is asserted as to what Allred relied upon in making such a determination. Additionally, "an enormous amount of taxes owing" is too vague a statement for this Court to order conversion of a case thereby effectively shutting down debtor's business.

The Court is also cognizant of the fact that Debtor has had as many as 36 employees. (Exhibit "A" to Schedule E of Debtor's schedules) Monthly operating reports indicate that $17,758.21 was disbursed for payroll in January 1992 and nearly $30,000 was disbursed in December 1991. The Court considers these amounts substantial and indicative of the continued vitality of Debtor's work force. Debtor also has work in progress and new accounts receivable as well as potential for other new projects.

The UST also argued that Debtor is delinquent in making contributions to the employees retirement trust fund as required under a collective bargaining agreement. Whether any such payments are in fact past due has yet to be decided and therefore cannot form part of a basis for any decision on the issue currently before the Court. Moreover, pursuant to 11 U.S.C. § 1113, the debtor-in-possession or trustee may be able to modify the collective bargaining agreement which could materially alter any such obligations.

■ Accordingly, weighing the scant showing made by the UST that conversion is warranted against this Court's belief that reorganization is preferred where possible, especially because of the newness of the case, the number of employees, and the safe harbor ideology accompanying Chapter 11 protection, the UST's request to convert this case is denied.

## II

In deciding not to convert the case, the Court is faced with the troubling prospect of this Debtor being in a transitional space without a trustee or debtor-in-possession. This situation is compounded by the fact

6. While the petition states the dba for Debtor herein is "Central California Concrete Cutting Company" as opposed to "Central California Concrete Cutting Co., Inc." as mentioned above, it is clear that these accounts are not for the related debtor Central California Concrete Coring Co., Inc. aka Concrete Coring Company, # 91–15037–A–K, which was converted to Chapter 7 by order of this Court January 23, 1992.

that the UST refuses to continue its search for prospective trustees.

■ This Court cannot appoint a trustee, as such a function is vested squarely with the UST. 11 U.S.C. § 1104(c); see also *In re Plaza De Diego Shopping Center, Inc.,* 911 F.2d 820 (1st Cir.1990); *In re Capital Services & Investments, Inc.,* 90 B.R. 382 (C.D.Ill.1988); *In re Glenco International Corporation,* 115 B.R. 308 (W.D.Okla.1990); see also H.R.Rep. No. 764, 99th Cong., 2d Sess. (1986), U.S.Code Cong. & Admin.News 1986, p. 5227.

■ Of the cases filed in the Fresno Division of the Eastern District of California, 37% are venued in Kern County (Appendix "A"—statistics compiled by the Bankruptcy Court Clerk's Office, Fresno Division, for 1991). One objection lodged by Debtor to the UST's Statement of Inability to Appoint Chapter 11 Trustee was that it was unfair for the UST to primarily contact potential trustees located in Fresno to administer a Kern County case. Debtor argued that most of the candidates in part declined to serve because of the substantial distance between Bakersfield and Fresno.

The UST's Statement of Inability to Appoint Chapter 11 Trustee shows that of the six trustee candidates they contacted, three cited distance as a factor in determining not to serve. Viewing these figures somewhat differently, of the five potential candidates from Fresno, 60% decided, at least in part, not to serve because of distance. Moreover, as to Messrs. Hawkins and Radke, it appears their sole and singular reasons for declining such an appointment was distance, as the following excerpt from the UST's Statement indicates:

"Mr. Radke and Mr. Hawkins both indicated that they would decline to accept this case as they felt that it would need strict supervision from the trustee and that would not be possible from Fresno."

See Trustee's Statement of Inability to Appoint Chapter 11 Trustee, p. 2:17–19. Accordingly, 40% of the candidates interviewed declined solely because distance precluded the supervision they felt was necessary in this case.

Looking to the remaining two prospective candidates from Fresno, John Eleazarian and Hilton Ryder, this Court is unaware of either serving as a Chapter 11 trustee within the last three to four years. In fact, this Court is unaware of Mr. Eleazarian's ever serving, although he is highly qualified to so serve.

■ Quite disconcerting to the Court is the UST's failure to perform its statutory duties. The UST is required to diligently attempt, after a good faith effort to gain input from "parties in interest," to appoint a trustee. *In re Plaza De Diego Shopping Center, Inc., supra,* 911 F.2d at 831 n. 18 citing *In re Capital Services & Investments, Inc., supra,* 90 B.R. at 384, 386. There is no evidence as to whether the UST spoke with Debtor, who certainly is a party in interest, reference Mr. Goldstick. The following portion of the record clearly reflects that the UST has not contacted Mr. Goldstick:

"Court: Do you have a suggestion as to a Chapter 11 trustee?

Fletcher: Yes. Well—

Court: Have you submitted that suggestion to the UST so that they can check on it?

Fletcher: Your Honor, we would like to approach Gary Goldstick to do that very thing.

Court: Well, have you?

\* \* \* \* \* \*

Court: Did you talk to Mr. Goldstick?

UST: No, your Honor, the UST has not. We contacted all the trustees that we feel would be appropriate to contact to serve in this case.

Court: Do you feel that Mr. Goldstick is not appropriate for this case?

UST: The UST has completed its contacting of the creditors and its contacting of potential trustees. *We are declining to contact any further parties to act as trustees in a Chapter 11.* (Emphasis added.)

Contrary to the mandate of 11 U.S.C. § 1104(c), the record further reflects that the UST was less than receptive to receiving input from Mr. Fletcher, counsel for

Mr. Conner individually who is a party in interest, reference the potential of Mr. Goldstick serving as trustee. Following the UST's statement that they declined to conduct a further search, and after Mr. Fletcher and the Court discussed the possibility of Mr. Goldstick's interest in the case, the UST retorted as follows:

"UST: Your Honor, for the record, I would point out to the debtor and to Mr. Fletcher that it is the United States Trustee who appoints and selects the Chapter 11 trustee."

■ The UST's rigid stance at the hearing indicates its clear failure to perform, or attempt to further execute, its statutorily imposed duties. This posture is puzzling in that there would appear to be competent individuals in the Kern County area who are potentially available to serve as trustee but have not been contacted. Paul Guymon, William Bullis, Frank Samples, Michael Warner, and various members of the law firm of Borton, Petrini & Conron, are all potentially viable trustee candidates. While 11 U.S.C. § 1104(c), its legislative history, and case law interpreting that section, clearly indicate that this Court cannot appoint a trustee or require the UST to appoint a trustee from a specific venue, they also reflect that the Court is clearly invested with the power to require continued efforts by the UST to seek, select, and appoint a trustee where the UST has failed to perform its statutory duty. *In re Plaza De Diego Shopping Center, Inc., supra,* 911 F.2d at 831 approvingly citing *In re Kontaratos,* 15 B.R. 298, 302 (1st Cir. BAP 1981); *In re Lathrop Mobile Investors,* 55 B.R. 766 (9th Cir. BAP 1985). Although the UST cannot be compelled to look exclusively to the Kern County area for a prospective trustee, the UST's Statement of Inability to Appoint a Chapter 11 Trustee and the practical aspects of this case indicate an exhaustive search in Kern County is practical and would be appropriate.

This Court also notes that Debtor, or any other party in interest, could in this instance avail itself of the procedure recently enacted and provided in Federal Rule of Bankruptcy Procedure 2020. That rule,

and the advisory notes thereto, indicate that any impropriety of the UST may be challenged as a contested matter, potentially resulting in an order from the Court mandating performance of the UST's statutorily imposed duties.

Moreover, it is fundamental that a major purpose of the UST pilot program and the subsequent nationwide implementation of the program was to relegate the administrative aspects of bankruptcy cases to the UST. *In re Johnson,* 116 B.R. 186 (N.D.Cal.1990); *In re Lathrop Mobile Investors, supra,* 55 B.R. at 768 and n. 2 (9th Cir. BAP 1985); *In re Plaza De Diego Shopping Center, Inc., supra,* 911 F.2d at 827–829 n. 16, and legislative history cited therein.

■ As this Court is bound to ensure that the judicial process involved for this reorganization is not subverted, which depends in the first instance upon proper administration of the case, the Court is compelled to use its equitable powers pursuant to 11 U.S.C. § 105(a) to require that the UST continue its search for, appointment of, and subsequent submission for approval by this Court of a trustee to serve herein. 11 U.S.C. § 105(a); *In re Johnson, supra,* 116 B.R. at 188.

This, however, resolves only one aspect of the dilemma before the Court. While the search for a trustee continues, who shall serve as the case trustee?

The Court has considered returning Debtor to a debtor-in-possession status through vacation of its prior order requiring appointment of a trustee. The Court, however, reserves making that decision at this time. Mr. Conner, as Debtor's principal, could, however, be hired by the estate as management. He most likely possesses the most knowledge reference Debtor's business affairs and no doubt is intricately involved in procuring contract work.

The Code and legislative history provide a short term solution to the problem at hand. Beginning with 11 U.S.C. § 103(a), it provides:

"Except as provided in section 1161 of this title, chapters 1, 3 and 5 of this title

apply in a case under chapter 7, 11, 12, or 13 of this title."

Section 1161 applies to railroad reorganization and, therefore, has no application herein. The legislative history of § 103(a) lends additional support for Chapters 1, 3, and 5 applicability across the board in all chapters.

The general provisions that apply no matter which chapter a case is filed under are found in Chapters 1, 3, and 5. House Report No. 95–595, 95th Cong., 1st Sess. 36 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 28 (1978); 1978 U.S.C.C.A.N. (92 Stat.) 5787, 5967. (See also *Matter of Rasmus*, 34 B.R. 9, 10 (M.D.Fla.1983) wherein Judge Paskay held that Chapters 1, 3, and 5 apply to the operating Chapters of the Code unless specifically excepted.)

Recognizing 11 U.S.C. § 1104(c) removes from the Court the ability to appoint a Chapter 11 trustee, it does not preclude this Court from ordering the UST to *serve* as trustee *where necessary*. 11 U.S.C. § 321(c). The Court can also easily reconcile the language appearing in 11 U.S.C. § 1104(c) wherein in pertinent part it provides:

> "If the court orders the appointment of a trustee ... then the United States trustee ... shall appoint ... one disinterested person *other than the United States trustee* to serve as trustee ..."

■ Considering the construction of this language, it is clear that the UST *shall not appoint itself* as Chapter 11 trustee. However, this is not to say they cannot serve as Chapter 11 trustee. While the court is unable to locate caselaw addressing the situation at hand, substantial authority exists supporting the conclusion that the UST may *serve* as a case trustee *if necessary*.

**ELIGIBILITY OF THE UNITED STATES TRUSTEE TO SERVE AS A CASE TRUSTEE**

Section 227 of the Senate bill clarified that a United States trustee may serve as a trustee in a case. Section 203 of the House bill also provided that a United States trustee could serve as a case trustee, but only upon certification by the United States trustee that such trustee was unable to locate a disinterested person to serve as case trustee. The House recedes.

The House and Senate Conferees agree that it is not their expectation or intent that the United States trustee will use the authority to serve as · case trustee frequently. The United States trustee is to make a good faith, diligent effort to locate a disinterested and qualified trustee. Conferees agreed that United States trustees in the pilot. program appear to be using their current authority to serve as case trustee in an appropriate manner."

Joint Explanatory Statement of the Committee of Conference for the 1986 Act at 46; see also 1986 U.S.C.C.A.N. (100 Stat.) 5227, 5247.

Similarly, the following excerpt from Colliers provides clarity to murky waters:

> "Section 321(c) provides that '[t]he United States trustee for the judicial district in which the case is pending is eligible to serve as a trustee in the case if necessary.' Thus, if the United States trustee is unable to find a person willing to serve as trustee in a case, this subsection empowers the United States trustee to serve as trustee if necessary. Obviously, it is expected that the United States trustee will use this authority infrequently and only after a good faith, diligent effort to locate a disinterested and qualified trustee."

5 *King*, Collier on Bankruptcy, ¶ 1104.04, at 1104–47 (15th ed. 1991).

Additional authority exists in the Code supporting the conclusion that the UST can serve as Chapter 11 trustee where necessary. 11 U.S.C. § 322(b)(1) automatically qualifies the UST to serve as a case trustee. The editorial comments reference the 1986 amendment to 11 U.S.C. § 322 state:

> "Subsection (b)(1) has been added to § 322 providing that the very act of serving as trustee in a case 'qualifies' the

United States trustee. This implements § 321(c) which provides that the United States trustee is eligible to serve as a trustee in a case."

See *King*, Collier Pamphlet Ed. Bankruptcy Code Part 1, at 109 (1991–1992).

Additional support exists in 28 U.S.C. § 586(a)(2) and (4) wherein the UST duties specifically require it to serve as and perform the duties of a case trustee when required to do so and deposit monies received as trustee for a case.

The UST may contend in light of the passages from the Joint Explanatory Statement and Colliers above that they are empowered or have the authority to determine whether they should serve as a Chapter 11 trustee. Certain factors compel a contrary conclusion. First of all, 11 U.S.C. § 321(c) sets forth that the UST shall only serve *if necessary*. Any determination as to necessity is a judicial function requiring findings and conclusions. Such functions are invested solely to the courts. Caselaw and the legislative history clearly indicate that the function of the UST is relegated to administrative acts. *In re Johnson*, 116 B.R. 186 (N.D.Cal.1990); *In re Lathrop Mobile Investors*, 55 B.R. 766, 768 and n. 2 (9th Cir. BAP 1985); *In re Plaza De Diego Shopping Center, Inc.*, 911 F.2d 820, 827–829 (1st Cir.1990). Administrative acts do not include making judicial determinations.

Secondly, the specific language of 11 U.S.C. § 1104(c) precludes the UST from appointing itself as a Chapter 11 trustee. Although "serve" and "appoint" are similar terms, they have distinct meanings. "Appoint" refers to designating a person in whom certain powers "vest" by virtue of the appointment. Merriam Webster, Webster's Third New International Dictionary (1986). "Serve" refers to one performing duties, acting in a capacity, and/or working through or performing a service. *Ibid*. While results achieved in some instances by a Chapter 11 trustee who is "appointed" and a UST who is "serving" as a Chapter 11 trustee may be the same, it cannot be said that these terms are synonymous. Clearly, "serve" connotes a less permanent obligation than does "appoint," which tends to "vest" rights in the appointee.

■ Thirdly, where language in a specific chapter of the Code conflicts with language in the general provisions applicable to all chapters, the specific chapter provision applies. *Matter of Rojas*, 10 B.R. 353, 355 (9th Cir. BAP 1981); *Busic v. U.S.*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381, 389 (1980).

While the Court is constrained from appointing a Chapter 11 trustee, where the UST certifies that it is unable to appoint a trustee, logic commands that after any judicial determination of necessity, the Court may require and order the UST to serve. Joint Explanatory Statement of the Committee of Conference for the 1986 Act at 46; see also 1986 U.S.C.C.A.N. (100 Stat.) 5227, 5247; 28 U.S.C. § 586(a)(2). This conclusion is logically arrived at as necessity under 11 U.S.C. § 321(c) can only be determined by a judicial body as opposed to an administrative body, and 28 U.S.C. § 586(a)(2) mandates that the UST be "required" by some entity to serve as case trustee. Further support exists when considering 11 U.S.C. § 1104(c) which precludes the UST from appointing itself as case trustee. The legislative history behind the 1986 amendments to 11 U.S.C. § 1104(c) indicates that the amendments were implemented as a checks and balance system to safeguard against any actual or perceived improprieties. This is especially true where the UST fails *or refuses* to comply with its statutory obligation to diligently seek, appoint, and gain approval of a Chapter 11 trustee.

As the UST has failed to diligently and realistically conduct a search for a Chapter 11 trustee, and refuses to look further, the Court finds and holds that necessity exists as contemplated under 11 U.S.C. § 321(c) for the UST to serve as trustee for the

interim. The UST shall forthwith assume all duties of the Chapter 11 trustee proscribed under the Code and shall serve until they are able to appoint another candidate.

### III

■ Addressing the issue of judicial notice, the following discourse occurred at the hearing on this matter.

"UST: ... There has also been a motion filed by the Southern California Laborer's Trust Fund indicating that post-petition payments due to the labor union and their trust fund have apparently not been paid even though the debtor is continuing to operate.

Court: How do you know about that? Is that something that I am supposed to know about?

UST: Your Honor, those documents are on file with the Court and in the UST's motion, we have requested that the Court take judicial notice of the pleadings in the Court's file pursuant to Federal Rule of Evidence 201.

Court: Well, I just don't take judicial notice of the entire file. If they are attached to your request to take judicial notice so that I can review them, I will review them, so the motion is denied.

UST: Your Honor, are you ruling on the UST's motion before I have finished?

Court: On that portion of it under 201.

Initially, the Court would like to note that it in no way intended to limit or cut off the UST's oral argument reference the motion to convert this case to a Chapter 7. However, the Court would further point out that it has been its standard and consistent practice since taking the bench in 1988 to require parties seeking judicial notice of documents to attach copies of the documents to the request for judicial notice in order to facilitate the Court's review of the same.

Federal Rule of Evidence 201(b) states that "a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Federal Rule of Evidence 201(c) states that the Court may take judicial notice whether requested or not. A Court is compelled to take judicial notice of such adjudicative facts under Federal Rule of Evidence 201(d) when requested by a party and supplied with the necessary information.

■ While the Court may take judicial notice of its own records (*United States v. Wilson*, 631 F.2d 118 (9th Cir.1980)), a party requesting judicial notice bears the burden of persuading the trial judge that the fact is a proper matter for judicial notice. *In re Blumer*, 95 B.R. 143 (9th Cir. BAP 1988); see also Russell, Bankruptcy Evidence Manual, 1990 ed. § 201.3, p. 77.

■ To sustain its burden in persuading the trial judge that the adjudicative fact sought to be noticed is in fact proper for notice under Federal Rule of Evidence 201, the party must (1) persuade the court that the particular fact is not reasonably subject to dispute and is capable of immediate and accurate determination by resort to a source "whose accuracy cannot reasonably be questioned" and (2) must also *supply the court with the source material needed to determine whether the request is justified. Ibid.*

■ In the instant matter, the UST failed to persuade the Court that the fact sought to be noticed was not reasonably subject to dispute nor did the UST show the Court that such fact was capable of immediate and accurate determination by resort to a source whose accuracy can not reasonably be questioned. Secondly, the

UST failed to supply that which they sought notice of to the Court. As stated at the hearing and reiterated herein, the Court will not rummage through the Court files and take notice of those documents requested absent those documents being supplied to the Court. It is not this Court's function to lay a record for the lawyers involved in this case.

While a court may judicially notice its own records, apparently the UST operates under the mistaken notion that judicially noticing documents in the Court's file necessarily includes noticing the truth of the facts asserted in each document. In the instant matter, the UST sought judicial notice of the adjudicative fact that debtor has failed to pay to Southern California Laborer's Trust Fund its post-petition payments due under the trust fund. Further, the UST sought notice that this alleged breach of its duties as a debtor-in-possession occurred while the debtor was continuing to operate.

■ The Court notes the facts set forth in the trust fund documents have yet to be passed upon by the Court and cannot at this point be taken as true. Not allowing the debtor herein to present rebuttal evidence or cross-examine the witnesses making the factual contentions asserted in the declaration in support of that motion would be violative of the fundamental concept of procedural due process. *In re Aughenbaugh*, 125 F.2d 887, 889 (3rd Cir.1942); see also Russell, Bankruptcy Evidence Manual, *supra*, at p. 78. Moreover, this Court can hardly consider the facts therein as supplanting the basis of this Court's decision. It necessarily follows that as those facts have yet to be adjudicated, this Court is precluded under Federal Rules of Evidence 201(b) from taking judicial notice. They are not generally known to be true or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. For those reasons, the UST's request for judicial notice is denied.

The Court further notes that in future motions where the UST requests judicial notice, it should attach copies of those documents of which notice is requested. UST pleadings should be treated no differently than those of other practitioners. The Court is familiar that the standard UST motion to dismiss, convert, or appoint a trustee contains a request for judicial notice. This issue has not arisen in the past, and this is an opportune time to address the issue at hand. Where judicial notice is sought in future cases, those documents or adjudicative facts sought to be noticed should be supplied to the Court.

## CONCLUSION

Based on the record herein and the findings of fact and conclusions of law set forth above, this Court concludes that conversion at this juncture is inappropriate. Moreover, as the UST has indicated its inability to appoint a trustee, The Court, under its equitable powers set forth under 11 U.S.C. § 105(a), orders the UST to continue diligently searching for a qualified candidate to be appointed by the UST as a Chapter 11 trustee. Until such appointment is made, the Court has determined that the UST's office shall serve as the Chapter 11 trustee under the provisions of 11 U.S.C. § 321(c) applied to the operative Chapters of the Code by virtue of 11 U.S.C. § 103(a).

To track the UST's progress in its search for a potential Chapter 11 trustee, MC # UST–1 will be continued for a further hearing to the Bakersfield calendar, March 26, 1992, at 9:00 a.m.

Lastly, as to judicial notice, it is this Court's policy, consistent with case law and evidence treatises, that where an adjudicative fact is sought to be judicially noticed as was in the instant case, the party seeking judicial notice of that adjudicative fact must supply this Court with the documents for the Court to determine whether judicial notice is appropriate under Federal Rule of Evidence 201.

## APPENDIX A

### PERCENTAGE OF FRESNO AND BAKERSFIELD

### CASES FILED—1991

| | FRESNO | | BAKERSFIELD | | TOTAL |
|---|---|---|---|---|---|
| | Total | Percent | Total | Percent | |
| JANUARY | 401 | 65% | 218 | 35% | 619 |
| FEBRUARY | 343 | 61% | 218 | 39% | 561 |
| MARCH | 419 | 65% | 223 | 35% | 642 |
| APRIL | 355 | 61% | 226 | 31% | 581 |
| MAY | 393 | 62% | 239 | 38% | 632 |
| JUNE | 356 | 63% | 208 | 37% | 564 |
| JULY | 380 | 63% | 227 | 37% | 607 |
| AUGUST | 370 | 64% | 212 | 36% | 582 |
| SEPTEMBER | 276 | 66% | 145 | 34% | 421 |
| OCTOBER | 388 | 66% | 196 | 34% | 584 |
| NOVEMBER | 312 | 60% | 210 | 40% | 522 |
| DECEMBER | 333 | 64% | 188 | 36% | 521 |
| TOTALS | 4326 | 63% | 2510 | 37% | 6836 |

## MEMORANDUM OPINION DENYING ALTERATION OR AMENDMENT

RICHARD T. FORD, Bankruptcy Judge.

### INTRODUCTION

The United States Trustee seeks an order of the Court reconsidering and vacating its order of March 6, 1992, see page 771, reference Motion No. UST–1.

The United States Trustee asserts that it made a good faith and diligent effort to find a trustee after the Court ordered the appointment of a trustee at the January 23, 1992 hearing. (UST–2 at p. 2:3–4)

The United States Trustee also misstates the record. Specifically, that portion of the United States Trustee's motion stating that the Court's judgment included an order "appointing the United States Trustee as the Chapter 11 trustee" is incorrect. (UST–2 at p. 2:7–19) That was not the impetus of the judgment. Rather, the judgment states that they shall serve until they appoint a trustee or satisfy the Court that they have made a good faith effort and have diligently sought to find an appropriate trustee without success.

The United States Trustee states that it cannot serve as the Chapter 11 trustee and that this motion is based upon that premise. (UST–2 at p. 2:23–24) Immediately preceding that sentence, the United States Trustee "respectfully declines the appointment." (UST–2 at p. 2:20–21) The United States Trustee also gives notice that it "is not and cannot act as the Chapter 11 trustee in this case." (UST–2 at p. 2:21–22) This is premised upon the United States Trustee's belief that it is incapable of serving as trustee. Again, 11 U.S.C. § 321(c) provides the United States Trustee can serve after a finding of necessity. 11 U.S.C. § 1104(c) does not provide the United States Trustee an out.

Having reviewed the record before the Court and after considering argument at the hearing, the Court concludes that the United States Trustee has failed to meet its burden in proving that the amendment or vacation of the March 6, 1992 judgment is warranted.

### APPEARANCES

This matter came on for hearing March 26, 1992. Carol D. Mills appeared for the United States Trustee. Robert J. Fletcher appeared on behalf of Debtor's sole shareholder, Tyrone F. Conner. The United States Trustee objected to Mr. Fletcher's appearance, and the Court overruled the objection. John Carlson of Borton, Petrini and Conron appeared as the potential coun-

sel for Debtor. Jerry A. Weissburg of the law offices of Albert J. Galinsky appeared on behalf of Southern California Laborer Trust Fund. Richard P. Sphar of Jett and Laquer appeared for the Operating Engineers Trust Fund. Terry Dennis specially appeared for Richard McBurnie as counsel for California Republic Bank.

## JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334. Venue is proper under 28 U.S.C. § 1408. The District Court has generally referred these matters to the Bankruptcy Court for hearing pursuant to 28 U.S.C. § 157(a) and United States District Court, Eastern District of California General Orders 182 and 223. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (O). This Memorandum Opinion constitutes this Court's findings of fact and conclusions of law.

## RECONSIDERATION

■ Although this motion is captioned as a motion for reconsideration, the United States Trustee has in the past objected to motions for reconsideration on the basis that the Federal Rules of Civil Procedure contain nothing denominated as a motion for reconsideration. (See *In re Montgomery Drilling*, # 189–01217–A–11K, United States Trustee's Comment in Opposition to Motion for Reconsideration, filed November 19, 1990).

This motion should and will be considered one under Federal Rules of Civil Procedure 59(e) and 52(b). *Munden v. Ultra–Alaska Associates*, 849 F.2d 383, 386 (9th Cir.1988); *Bestran Corp. v. Eagle Comtronics, Inc.*, 720 F.2d 1019 (9th Cir. 1983).

1) Such motions must be made within ten days after the entry of judgment. FRCP 52(b); FRCP 59(e); FRBP 9023; see also *Munich v. U.S.*, 330 F.2d 774 (9th Cir.1964).

In this case, the motion was timely filed, so we move to the United States Trustee's burden of proving their motion.

■ 2) To warrant alteration or amendment of the March 6, 1992 decision, the United States Trustee must show either:

a) manifest error of law or fact; or

b) the existence of newly discovered evidence which was not available at the time of the original hearing. (See *In re Wildman*, 72 B.R. 700, 704 (N.D.Ill.1987))

## UNITED STATES TRUSTEE'S CONTENTIONS

The first sentence of the Points and Authorities misstates the record. It is alleged that the Court, at p. 780 of its March 6, 1992 Opinion, found that because the United States Trustee failed to diligently and realistically conduct a search for a Chapter 11 trustee and refuses to look further, it was necessary to *appoint* the United States Trustee to serve as the Chapter 11 trustee in this case until another candidate could be found.

This is not what the finding at p. 22 states. Rather it states "The Court finds and holds that necessity exists as contemplated under 11 U.S.C. § 321(c) for the United States Trustee to serve as trustee in the interim. The United States Trustee shall forthwith assume all duties of the Chapter 11 trustee proscribed under the Code and shall serve until they are able to appoint another candidate." In effect, 11 U.S.C. § 321(c) provides for service by the United States Trustee by default.

This finding comprehends something completely different than that alleged by the United States Trustee. The United States Trustee attempts to state that the Court appointed the United States Trustee to serve. Rather, the Court held that necessity existed for the United States Trustee to serve based upon the findings that:

1) The United States Trustee failed to meet its burden warranting conversion; (see p. 6:15–17 of Memorandum Opinion and also p. 10:16–21 of Memorandum Opinion)

2) The Court cannot appoint a Chapter 11 trustee; (see Memorandum Opinion at p. 11:4–11) (Contrary to the United States Trustee's repeated assertion, the Court did not appoint a trustee.)

3) The United States Trustee failed to execute its statutory obligation under 11

U.S.C. § 1104(c) and Federal Rule of Bankruptcy Procedure 2007.1 by not diligently and realistically conducting a search for a Chapter 11 trustee to serve in this case. Nor did the United States Trustee gain sufficient input from interested parties as the record appeared before the Court; (Memorandum Opinion at p. 12:19-23; p. 13:22-25; p. 14:1-11; p. 22:2-4)

4) Necessity existed under 11 U.S.C. § 321(c) for the United States Trustee to serve until a diligent effort was made to locate a qualified candidate to serve as Chapter 11 trustee. (Memorandum Opinion at p. 22:4-6)

### MANIFEST ERROR OF LAW OR FACT

■ The Court is of the opinion that there has been no error of law or fact. The United States Trustee asserts that the Court recognized the potential difficulty that may have been encountered in finding a willing trustee candidate. (UST-2 at p. 4:9-12 and 14-16) They allude to the record of the January 23, 1992 hearing in which the Court indicated that if the United States Trustee could not find a qualified candidate, that the "... debtor will remain in possession until that appointment is made." Arguably, it can be stated that this means Tyrone Conner would continue to operate the business. However, this sentence, relied upon by the United States Trustee, is taken out of context from the January 23, 1992 hearing. The transcript shows that immediately preceding that sentence, the Court stated: "I am going to authorize the appointment of a Chapter 11 trustee." (January 23, 1992 transcript at p. 16:19-20)

Following the sentence quoted by the United States Trustee, the Court states: "In the meantime, if there is no Chapter 11 trustee approved by the Court, this matter will be continued to February 26th at 1:30 and I will at that time rehear the United States Trustee's motion to dismiss or convert." (January 23, 1992 transcript at p. 16:24-25; 17:1-4) This language indicates that the Court was willing to allow the debtor to remain in possession until the February 26, 1992 hearing, but at that time the United States Trustee's motion, UST-1, which sought conversion, dismissal and appointment of a trustee, would be back on

calendar. Further support exists in the January 23, 1992 record by reading through the transcript, specifically at p. 7:18-21; p. 9:24-25; p. 10:1-3. It appears that despite the United States Trustee's motion to appoint a trustee, convert or dismiss, the debtor stipulated or agreed to the appointment of a trustee. In fact, the transcript reveals at pp. 13:16-25; 14:1-17, and 16:12-19 that the United States Trustee focused their argument on conversion but failed to meet their burden so their request was denied. Accordingly, the Debtor's request to appoint a trustee was the basis of the stipulation/order approved by the Court.

The Court's order at the January 23, 1992 hearing only contemplated leaving Tyrone Conner in possession of the corporation up until the time of the February 26, 1992 hearing. Unforeseen at the January 23, 1992 hearing was the United States Trustee's lack of diligence in seeking a trustee candidate to submit to the Court for approval. The Court anticipated receiving the name of a trustee candidate within four days of the January 23, 1992 hearing, or January 27, 1992. (January 23, 1992 transcript at p. 17:9-18) The Statement of Inability to Appoint a Trustee was filed by the United States Trustee on February 14, 1992—18 days after the Court's order at the January 23, 1992 hearing. Although the Court perceived potential problems in locating a willing candidate, allowing Tyrone Conner to remain in possession was to be a short term solution to the problem at hand.

The United States Trustee asserts that "The appointment by the Court of the United States Trustee to serve as the Chapter 11 trustee, however, is not among the available options." (UST-2 at p. 4:14-16) First, the Court did not appoint the United States Trustee. Rather, as discussed above, the United States Trustee ended up serving by default as a result of the Court making a finding that necessity existed for them to serve by reason of their failure to perform their statutorily imposed duties.

The United States Trustee contends that 11 U.S.C. § 1104(c) clearly precludes the

United States Trustee from serving as a Chapter 11 trustee. They also point to the rule of statutory construction that the more specific chapters govern. The plain language of 11 U.S.C. § 1104(c) states that the United States Trustee cannot appoint itself to serve, rather than the United States Trustee not being able to serve. In fact, the specific language of 11 U.S.C. § 321(c) contemplates something quite different, that being necessity of the United States Trustee to serve where another trustee is not available to serve. For instance, what would happen in a Chapter 11 case where an appointed trustee died? Would the case revert to a Debtor-in-Possession type case or would conversion be the proper course? Neither would necessarily be appropriate, because depending on the status of the case, necessity might exist therein for the United States Trustee to serve until another trustee could be appointed. 11 U.S.C. § 322(b)(1) lends further support as an enabling statute to the proposition that the United States Trustee may qualify in *any* Chapter to serve as trustee. It does not preclude the United States Trustee's ability to serve in a Chapter 11. Further, none of the United States Trustee guidelines or any provision of the Code state that the United States Trustee cannot serve in a Chapter 11. Rather, they collectively indicate that the United States Trustee is always able to serve. As to the above, the Court finds and holds that the United States Trustee has failed to show a manifest error of law or fact warranting a granting of the motion "to reconsider."

### OTHER POINTS RAISED BY THE UNITED STATES TRUSTEE

 1. The United States Trustee asserts that 11 U.S.C. § 307 precludes the United States trustee from proposing a plan and that this is the trustee's preeminent responsibility. (UST–2 at p. 5:18–19; p. 9:19). While it is true that the United States Trustee cannot file a plan, it could assist the Debtor or creditors in preparing and filing a plan which would be in accordance with the trustee's duties under 11 U.S.C. § 1106. The Court knows of no reason why the United States Trustee could not investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business, and the desirability of the continuance of such a business as is relevant to the case or to the formulation of a plan. (11 U.S.C. § 1106(a)(3)) 11 U.S.C. § 307 does not preclude the United States Trustee from such a course of conduct.

Nor does 11 U.S.C. § 1106(a)(5) functionally limit the United States Trustee's role. The United States Trustee may, as soon as practicable, file a report as to why they will not file a plan. This is no way limits their ability to perform under 11 U.S.C. § 1106(a)(3) and to work with creditors in structuring a plan or determining whether to seek dismissal or conversion by gathering and submitting relevant, admissible evidence to the Court upon which such a judgment could be rendered. In fact, this would be in accord with the Executive Office for United States Trustee Policy Statement issued March 8, 1990, stating in substance that the United States Trustee's role should be one of oversight, limited to fostering creditor involvement and insuring the integrity of the process. Clearly evident in this case is the United States Trustee's resistance in conforming with its own policies as well as those obligations set out under the Code.

Accordingly, this contention advanced by the United States Trustee is neither a manifest error of law or fact supporting their motion.

2. Reference the motion, UST–2, at p. 3:8–13, the United States Trustee asserts:

"Prior statements as to the U.S. Trustee's inability to find a qualified and willing person to serve as trustee, and the U.S. Trustee's inclination not to continue the search, were made in light of and in support of the U.S. Trustee's renewed motion to convert the case. The conversion to Chapter 7 would have obviated any need to appoint a Chapter 7 trustee. Since the U.S. Trustee's renewed motion to convert was denied, the U.S. Trustee reaffirms its obligation and continuing commitment to search for a Chapter 11 trustee."

While the United States Trustee now reaffirms its statutory obligations, its tone

and demeanor at the February 26, 1992 hearing left an entirely contrary impression without qualification. The transcript from the February 26, 1992 hearing, in part is as follows:

"UST: ... We contacted all the trustees that we *feel* would be appropriate to contact to serve in this case.

Court: Do you feel that Mr. Goldstick is not appropriate for this case?

UST: The UST has completed its contacting of the creditors and its contacting of potential trustees. We are declining to contact any further parties to act as trustees in a Chapter 11."

The above statement of the United States Trustee in motion UST-2 speaks neither to a manifest error of law nor facts warranting alteration or amendment of the decision. Additionally, although the United States Trustee's motion to convert has been denied, there is no rule of which the Court is aware precluding the filing of a new motion to dismiss or convert based on new or different facts.

3. The United States Trustee asserts that the principle basis of the Court's decision to appoint a trustee was because of the unauthorized transfers of money to Conner. (UST-2 at p. 3:16) As mentioned above, although the United States Trustee's motion was brought on four grounds (failure to file operating reports, failure to prove existence of a Debtor-in-Possession account, diminished value of the estate, and unauthorized loans), the order requiring the appointment of a trustee was by stipulation or agreed to by the Debtor. Moreover, the thrust of the United States Trustee's argument was for conversion of this case, and the Court ruled at the time of the hearing that the only admissible evidence submitted by the United States Trustee to support conversion, dismissal, or appointment of a trustee was the United States Trustee's application and notice. (January 23, 1992 transcript at p. 16:14–16) The Court found and held that the United States Trustee failed to meet its burden of proof regarding its motion, UST-1. (January 23, 1992 transcript at p. 16:16–19)

4. The United States Trustee asserts that the Court failed to consider the possibility that a trustee could not be found.

(UST-2 at p. 3:22–23) This is incorrect. The Court specifically considered returning the debtor to a Debtor-in-Possession status pending the outcome of a search for a trustee, however reserved from making any such immediate decision. (Memorandum Opinion at p. 16:7–12) The Court could also have converted the case had the United States Trustee conducted a diligent search and provided the Court with relevant, admissible evidence as to why the corporate debtor should be converted. In fact, this option still exists today.

Accordingly, the above grounds do not warrant the March 6, 1992 order being set aside or a granting of the motion "for reconsideration."

## NEWLY DISCOVERED EVIDENCE

█ Lastly, looking to "newly discovered evidence that was not available at the time of the original hearing," Carol D. Mill's declaration does not convincingly support the granting of the United States Trustee's motion. As that declaration indicates, the United States Trustee has contacted these potential candidates after the February 26, 1992 hearing. These contacts could easily have been made prior to the February 26, 1992 hearing. This evidence was, and could have been, available at the original hearing had the United States Trustee diligently performed its trustee search in the first instance. Therefore, the standard for granting the United States Trustee's motion under this point must be denied.

The Court also makes the following comments opining that the United States Trustee's Office appears to have an insufficient pool of trustees ready to serve as a Chapter 11 trustee when needed. Of the nine candidates contacted by the United States Trustee subsequent to the February 26, 1992 hearing, four of the candidates are outside the Kern County area, specifically in the Southern California and/or Santa Barbara coastal areas. Those candidates are Michael Warner, David McGoldrick, Peter Susi, and Donald Henry. Of these four potential candidates, the Court is familiar with Michael Warner and Peter Susi. Consistent with this Court's prior opinion of

788

March 6, 1992, this Court feels that distance and their commitments in the Southern California and Santa Barbara areas would necessarily preclude them from being realistic choices as trustee candidates. In addition, there is no information available about their willingness to serve in any Chapter 11 case.

Moving to the remaining five persons contacted—Gary Goldstick, John Carlson, Frank Samples, William Bullis, and Paul Guymon—only two appear to this Court to be realistic choices in this instance as Chapter 11 trustees. Gary Goldstick is competent to perform the duties as a Chapter 11 trustee, as is Frank Samples. However, with respect to John Carlson, he is not a real candidate as he is considering becoming Debtor's counsel. As to William Bullis and Paul Guymon, the Court is aware that Mr. Bullis has recently become a Chapter 7 trustee and further that he has had no experience in a complex case such as this one. Therefore, while not stating that Mr. Bullis is not competent to execute the duties of a Chapter 11 trustee, it is unrealistic that he would consider taking this particular case. As to Mr. Guymon, while being a Chapter 7 trustee in the Kern County area, the Court is unaware of any qualifications qualifying him to be a Chapter 11 trustee.

The Court believes that the pool of potential Chapter 11 trustee candidates for the Fresno and Kern County areas is insufficient or non-existent. Roger Allred and Gary Goldstick seem to be the only trustees from the Kern County area in the United States Trustee's Chapter 11 pool. In Fresno County, Steven Diebert and Robert Freitas are the only Chapter 11 trustees of which this Court is aware that the United States Trustee considers for use. In contrast, the United States Trustee's Office in Sacramento, which is less populous than Fresno, reportedly has more than a dozen in their pool of Chapter 11 trustees.

Paragraph 3 of the Mills declaration in support of the United States Trustee's motion states that the entire pool of potential Chapter 11 trustee candidates was considered for appointment as Chapter 11 trustee in this case. The Court has already determined that of the six individuals contacted, only one was a realistic choice. The Mills declaration further sets forth in paragraph 9 that the United States Trustee contacted the Building Industry Association seeking suggestions as to other potential trustee candidates in the Bakersfield area.

What the above four paragraphs collectively indicate is that the current pool of potential Chapter 11 trustees considered by the United States Trustee's Office is insufficient to realistically meet the needs of the area that this United States Trustee's Office oversees. The Court strongly urges that the United States Trustee's Office add to the pool of potential Chapter 11 trustee candidates by seeking out qualified individuals from the Fresno and Kern County regions.

Lastly, the Court received a copy of a letter from Mr. Tom O'Brien addressed to Ms. Carol Mills of the United States Trustee's Office regarding the appointment of a Chapter 11 Trustee in the Tyrone F. Conner Corporation case. (See Appendix "A" attached hereto) The opening two sentences of that letter reaffirm this Court's observation that qualified individuals exist within the immediate area that have yet to be contacted or given an opportunity to serve as a Chapter 11 trustee. The letter from Mr. O'Brien clearly indicates that he has conveyed an interest to the United States Trustee's Office in serving as a Chapter 11 trustee and that this was conveyed to the United States Trustee's Office over one year ago. The letter by Mr. O'Brien is thoughtful, realistic, and shows a genuine interest in serving as a Chapter 11 trustee, though not necessarily in this case.

CONCLUSION

The Court concludes that the United States Trustee's Office has failed to meet its burden of proof in showing that there has been a manifest error of law or fact or the existence of newly discovered evidence which was not available at the time of the

original hearing. Accordingly, the motion, UST–2, is denied.

### APPENDIX A

2149 Rall

Clovis, CA 93612

March 21, 1992

209–294–0447

Ms. Carol Mills

U.S. Trustees Office

1130 O Street

Fresno, CA 93721

Re: Appointment of Ch 11 Trustee—Tyrone F Conner Corporation, Inc.

Dear Ms. Mills

Thank you for the opportunity to serve as a Ch 11 Trustee in the above referenced case. It is unfortunate that after waiting a year for an opportunity to serve as a Trustee, my review indicates that an outside Chief Executive Officer, not an at risk trustee, may be the best solution to effect successful reorganization of this Corporate Debtor.

I have reviewed the available documentation on the above case but have been unable to review the associated cases, (1) Tyrone and Deborah Conner (Ch 11), (2) Central Calif Coring, Inc (Ch 7). My review indicates that conversion of the case to Ch. 7 Status or appointment of a Ch 11 Trustee are both potentially detrimental to creditors of the estate at this time. However there is concern that continued administration of the estate by existing management points to the erosion of creditors equities in this estate and potentially, due to IRS collection of postpetition unpaid withholding taxes from corporate fiduciaries, in the estate of Tyrone and Deborah Conners.

This concern is emphasized by paragraph 6 of Tyrone F. Conners Statement dated February 21, 1992.

"6. Second, schedules F and G of the 1992 report show that there were new accounts receivable in the amount of $72,169.39 from operations while new operating debts incurred were only $48,918.64."

The above statement shows a clear lack of administrative understanding of fiscal reporting in that it omits $17,758,21 disbursed for payroll, $8,288.27 accrued but unpaid payroll taxes and approximately $3,000.00 amortization of workmans compensation deposits. Accrual for liability to Union Retirement Funds, if any, has not been addressed at this review.

From this information it could be extrapolated that expenses exceeded income for the above period. HOWEVER, THE MOST ACCURATE STATEMENT WOULD BE, INSUFFICIENT INFORMATION HAS BEEN PRESENTED TO FAIRLY ASSESS THE PROFITABILITY OF THE COMPANY AT THIS TIME. (e.g. consideration for unbilled work in progress may not have been addressed in the accounts receivable analysis).

The Court has addressed this situation in its March 6, 1992 Opinion at page 6 line 7.

"As to the remaining factors listed above, they collectively indicate that the corporate debtor is in need of competent management and counsel."

Employment of competent management and counsel may well solve the immediate concerns of the U.S. Trustee and the Court. However, unless the Corporate debtor has the ability to engage and adequately compensate personnel knowledgeable in the day to day operations of the corporation, the debtor may be unable to perform under existing contracts and may be precluded from obtaining new contracts essential to the viability of the operation.

The Court has addressed this concern in the recent opinion at page 16, line 9.

"The Court has considered returning debtor to a debtor in possession status through vacation of its prior order requiring appointment of a trustee. The Court, however, reserves making that decision at this time. Mr. Conner, as Debtors principal, could however be hired by the estate as management. He most likely possesses the most knowledge reference Debtors business affairs and no doubt is intricately involved in procuring contract work."

In following with the concerns of the U.S. Trustees, insights of the Court and debtors lack of demonstrated administrative skills, the following solution is humbly set forth in order to allow the debtor the safe harbor ideology accompanying Chapter 11 protection.

1. The Court vacate its prior order requiring appointment of a trustee on the following conditions;

a. That by March 27, 1992 the debtor employ an unrelated third party as chief executive officer, acceptable to the U.S. Trustee, to administer the estate.

b. That a 120 day interim budget for continued operation of the estate be prepared and presented to the U.S. Trustee for review by April 15, 1992 and to the Court by May 1, 1992 as an operating instrument pending finalization of a plan of reorganization for the estate.

c. That the CEO of the debtor be authorized by the Court to employ Tyrone Conner to aid in the administration of existing contracts and procurement of new contracts.

d. That the CEO, in addition to compensation, be authorized expenses for travel and, due to the complexity and personal risk of the case, be authorized ($5,000) to employ executive counsel in addition to counsel for the debtor.

e. That effective immediately Federal and State payroll tax liability for the then ended payroll period be deposited with an approved depository for such taxes. (eg pay the tax when payroll checks are issued).

f. That a plan of reorganization, which includes financial analysis of all existing and proposed contracts, collection of post petition loans, analysis of union retirement fund liability and an annual operating budget be filed with the Court by July 1, 1992.

g. That failure to comply with the above provisions be deemed sufficient grounds for conversion of the case to a Chapter 7 status.

In summary, my review of the available information indicates, with a *team* effort of existing technical management, new administrative management, debtor counsel, executive counsel, the U.S. Trustees office and the Court, that this entity can be successfully reorganized. However, without new administration, adequate fiscal control, budgeting, planning and communication, equities may quickly erode warranting expeditious conversion to Chapter 7 status.

Should you have any questions or if I can be of further service, please call.

Sincerely,
Tom O'Brien
/s/ Tom O'Brien

cc: Richard T. Ford
United States Bankruptcy Judge